**FILED**



**UNITED STATES BANKRUPTCY COURT**
Northern District of California
**U.S. Courthouse and Federal Building**
280 South First Street Room 3035
San Jose, California 95113-3099
(408) 535-5118

JUL 2 2 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**FILED**

JUL 2 2 2008

CLERK
United States Bankruptcy Court
San Jose, California

Gloria L. Franklin
Clerk of Court

Richard W. Wieking, Clerk
United States District Court
280 South First Street
San Jose, CA 95113

# C08 03563 RMW

Re:    *Case Name:  Corrina Curiel Lona*
       *Case Number:  03-53915 - RLE (7)*
       *Bankruptcy Judge Name:  Roger L. Efremsky*

Dear Mr. Wieking:

[ ] Enclosed please find the notice of appeal, certified copy of the docket and order being appealed and related papers from BAP and designated items to form the record on appeal for assignment to a district court judge.

[X] Enclosed please find a conformed copy of the notice of appeal, election to district court document, as well as a certified copy of the docket and order being appealed for assignment to a district court judge.

[ ] Enclosed please find the record of designated items and a certificate of record for an appeal that has been previously sent to the district court.

[ ] Enclosed please find a Bankruptcy Judge's Recommendation that Appeal Be Dismissed and the Notice of Appeal and associated documents filed with the Bankruptcy Court.

Please acknowledge receipt of this appeal by stamping the district court case number on a copy of this letter and return it to Erica Rendler .

Gloria L. Franklin, Clerk
United States Bankruptcy Court

Dated: July 22, 2008            By:    Erica Rendler,  Deputy Clerk

1   Re: 03-53915 - RLE (7)
    Corrina Curiel Lona
2

3                    UNITED STATES BANKRUPTCY COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5                        CERTIFICATE OF MAILING

6

7          I, the undersigned, a regularly appointed and qualified clerk in the office of the Northern
    District of California, San Jose, California, hereby certify:
8
           Notice of Appeal.
9
           That I, in the performance of my duties as such Clerk, served a copy of the foregoing
10  document by depositing it in the regular United States mail at San Jose, California on the date shown
    below, in a sealed envelope bearing the lawful frank of the United States Bankruptcy Court
11  addressed as listed below.

12

13  Kathryn S. Diemer, Esq.                    Nanette Dumas
    Diemer, Whitman and Cardosi                Office of the U.S. Trustee
14  75 E. Santa Clara St.                      280 S. First St., #268
    San Jose, CA 95113                         San Jose, CA 95113
15
    Stevan C. Adleman, Esq.                    Richard W. Wieking, Clerk
16  Miller, Morton, Caillat & Nevis, LLP       United States District Court
    25 Metro Drive, 7th Floor                  280 South First Street
17  San Jose, CA 95110                         San Jose, CA 95113

18

19

20

21

22

23  Dated:  July 22, 2008

24                                             Erica Rendler,  Deputy Clerk

25

26

27

28

                                              1

Certificate of Mailing.wpt

1   DIEMER, WHITMAN & CARDOSI, LLP
    KATHRYN S. DIEMER, #133977
2   JUDITH L. WHITMAN, #103385
    75 East Santa Clara Street, Suite 290
3   San Jose, California   95113
    Telephone:   (408) 971-6270
4   Facsimile: (408) 971-6271

5   ATTORNEYS FOR
    Corrina Curiel Lona

6

7

8
                    UNITED STATES BANKRUPTCY COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10

11

12
    In re:                          )    Case No.  03-53915 RLE
13                                   )
    Corrina Curiel Lona,             )         CHAPTER 7
14                                   )
                                     )
15              Debtor.              )
                                     )
16  _____  )

17

18

19

20                    **NOTICE OF APPEAL**

21

22

23

24

25

26

27

28
    _____
                        1
                  NOTICE OF APPEAL

1

2        Debtor, Corrina Curiel Lona, appeals, under 28 U.S.C. §158(a), from the order of the

3  Bankruptcy Court entered on July 9, 2008, overruling Debtor's objection to the claim of Jose

4  Abreu, dba Intertel Communications, and allowing said claim in the amount of $439,000.

5        The names of all parties to the order appealed from and the names, addresses and

6  telephone numbers of their respective attorneys are as follows:

7

8        __PARTIES__                __ATTORNEYS__

9     Corrina Curiel Lona,            Kathryn S. Diemer, Esq,

      Debtor and Appellant         Diemer, Whitman & Cardosi, LLP

10                           75 E. Santa Clara Street, Suite 290

                           San Jose, CA 95113

11                           Tel: (408) 971-6270

                           Fax: (408) 971-6271

12

13     Jose Abreu                    Stevan C. Adleman, Esq.

      dba Intertel Communications,     Miller, Morton, Caillat & Nevis, LLP

14     Creditor and Appellee         25 Metro Drive, 7th Floor

                           San Jose, CA 95110

15                           Tel: (408) 292-1765

                           Fax: (408) 436-8272

16

17

18  Dated: July 18, 2008             DIEMER, WHITMAN & CARDOSI, LLP

19

20                      By: _____/s/ Judith L. Whitman_____

                           Attorneys for Appellant

21                         Corrina Curiel Lona

22

23

24

25

26

27

28

1   DIEMER, WHITMAN & CARDOSI, LLP
    KATHRYN S. DIEMER, #133977
2   JUDITH L. WHITMAN, #103385
    75 East Santa Clara Street, Suite 290
3   San Jose, California   95113
    Telephone:  (408) 971-6270
4   Facsimile: (408) 971-6271

5   ATTORNEYS FOR
    Corrina Curiel Lona

6

7

8
               UNITED STATES BANKRUPTCY COURT
9
               NORTHERN DISTRICT OF CALIFORNIA
10

11

12
  In re:                       )    Case No.  03-53915 RLE
13                          )
  Corrina Curiel Lona,        )      CHAPTER 7
14                          )
                         )
15           Debtor.         )
16

17                 **STATEMENT OF ELECTION TO HAVE**
           **APPEAL HEARD BY THE DISTRICT COURT**
18

19       Pursuant to 28 U.S.C. §158( c)(1), Appellant, Corrina Curiel Lona, hereby elects to have

20   her appeal in this matter heard by the District Court instead of the Bankruptcy Appellate Panel.

21   Dated: July 18, 2008           DIEMER, WHITMAN & CARDOSI, LLP

22

23                     By:   _____/s/ Judith L. Whitman_____
                           Attorneys for Appellant,
24                            Corrina Curiel Lona

25

26

27

28

                                   1
     STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY THE DISTRICT COURT

Entered on Docket
July 09, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed July 09, 2008

Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

San Jose Division

In re CORRINA CURIEL LONA,                    Case No. 03-53915 RLE

                                              Chapter 7

                Debtor.

_____/

ORDER AFTER TRIAL

For the reasons stated in the Court's July 9, 2008
Memorandum Decision After Trial and good cause appearing,

IT IS HEREBY ORDERED that the Objection by Debtor Corrina
Curiel Lona to the claim of Jose Abreu, dba Intertel
Communications, is OVERRULED.

IT IS FURTHER ORDERED that the claim of Jose Abreu, dba
Intertel Communications shall be allowed in the stipulated amount
of $439,000.

**** END OF ORDER ****

Order After Trial

1  **Court service list**: [by mail and/or ecf]

2  David V. Duperrault  [ecf]
   25 Metro Drive, Suite 600
3  San Jose, CA 95110
   dvd@svlg.com
4
   Stevan C. Adelman [mail]
5  25 Metro Drive, 7th Floor
   San Jose, CA 95110
6
   Kathryn Diemer [ecf]
7  75 E. Santa Clara St., Suite 290
   San Jose, CA 95113
8  kdiemer@diemerwhitman.com

9  Charles Maher [ecf]
   121 Spear St., Suite 200
10 San Francisco, CA 94105
   cmaher@luce.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order After Trial                    2

Entered on Docket
**July 09, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**The following constitutes the**
**Memorandum Decision of the Court.**
**Signed July 09, 2008**

Roger L. Efremsky
U.S. Bankruptcy Judge

1

2

3

4

5

6

7

8

9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    San Jose Division

13

14

15    In re CORRINA CURIEL LONA,              Case No. 03-53915 RLE

16                                            Chapter 7

17              Debtor.

18    _____/

19

20         MEMORANDUM DECISION AFTER TRIAL

21

22       Before the Court for decision is the objection of the debtor

23    Corrina Curiel Lona ("Lona") to the unsecured claim of Jose

24    Abreu, dba Intertel Communications ("Abreu").  Abreu's claim is

25    based on his contention that Lona was an actual or ostensible

26    partner with Timothy Turi ("Turi") in a business called Time Zone

27    Distributing ("Time Zone").  The objection is based on Lona's

28

      Memo. Decision After Trial.

1  contention that she was merely an employee of Time Zone and is
2  not responsible for its debts.

3      The matter has been tried and submitted for decision.  Abreu
4  is represented by Stevan C. Adelman of Miller, Morton, Caillat &
5  Nevis, LLP.  Lona is represented by David V. Duperrault of the
6  Silicon Valley Law Group.  At trial on June 4, 5, 8 and 11, 2007,
7  Abreu offered the testimony of the chapter 7 trustee John
8  Richardson, Eugene Katz and himself.  Lona offered the testimony
9  of Timothy Turi, Alvaro Amador, Swan Nguyen, Romulus Bobesku,
10  Mauricio Diaz and Marysol Solorio.  Lona declined to testify in
11  her case-in-chief, but testified on rebuttal.

12      The following constitutes the Court's findings of fact and
13  conclusions of law, pursuant to Rule 7052 of the Federal Rules of
14  Bankruptcy Procedure.

15

16  I.  **PROCEDURAL BACKGROUND**

17      A.  **Lona Is Not Entitled to a Discharge**

18      Lona filed this chapter 7 case on June 16, 2003.  The United
19  States Trustee sued Lona under Bankruptcy Code §§ 727(a)(2)(A),
20  (a)(2)(B), and (a)(4)(A) and the Court has entered an order
21  denying Lona's discharge.

22      B.  **Lona Has Standing to Object to Abreu's Claim**
23      On the first day of trial, Abreu's counsel raised a question
24  as to whether Lona had standing to object to Abreu's claim.
25  Under the circumstances of this case, Lona has standing.

26      Bankruptcy Code § 502 provides that a "claim or interest,
27  proof of which is filed under section 501 of this title, is

28
Memo. Decision After Trial.         2

1  deemed allowed, unless a party in interest . . . objects." The

2  term "party in interest" is not defined in the Bankruptcy Code or

3  the Federal Rules of Bankruptcy Procedure, but courts have held

4  that standing in a bankruptcy context requires an "aggrieved

5  person" who is directly and adversely affected pecuniarily by an

6  order of the bankruptcy court.  <u>Fondiller v. Robertson (In re</u>

7  <u>Fondiller)</u>, 707 F.2d 441, 442-43 (9th Cir. 1983) (citations

8  omitted); <u>Licensing by Paolo, Inc. v. Sinatra (In re Gucci)</u>, 126

9  F.3d 380, 388 (2nd Cir. 1997).

10      Generally, a chapter 7 debtor does not have standing to

11  object to claims because the debtor has no interest in the

12  distribution of assets of the estate and therefore, is not an

13  "aggrieved person."  There are two recognized exceptions to this

14  general rule: a chapter 7 debtor will have standing where (1)

15  disallowance of a claim will produce a surplus for the debtor; or

16  (2) where a claim will not be discharged.  <u>In re Willard</u>, 240

17  B.R. 664, 668 (Bankr. D. Conn. 1999) (citing <u>In re Toms</u>, 229 B.R.

18  646, 650-51 (Bankr. E.D. Pa. 1999)); <u>see also</u>, <u>Menick v. Hoffman</u>,

19  205 F.2d 365 (9th Cir. 1953) (debtor was a "person aggrieved"

20  with standing to challenge disallowance of tax claim where, if

21  tax claim was not paid in bankruptcy, debtor would remain liable

22  for such claim post-discharge).

23      The chapter 7 trustee testified that as of the trial date,

24  the estate held $133,118 for payment of administrative expenses

25  and unsecured claims, that unsecured claims exceeded $177,000 and

26  that he had not objected to any of the pending claims.  Tr.

27  146:6-147:18; 148:18-149:2.  Given that Lona is not entitled to a

28

Memo. Decision After Trial.                3

1  discharge, if Abreu's claim is allowed, the pro rata share of the
2  funds available to pay unsecured claims will be reduced and Lona
3  will remain personally liable post-bankruptcy for any unpaid
4  balance.  As a result, Lona is an "aggrieved person" who is
5  directly and adversely affected by an order of the bankruptcy
6  court and has standing to object to Abreu's claim.

7      **C.    Late-filed Trial Briefs**

8      Following the first day of trial, Kathryn Diemer, counsel
9  for Lona's husband, Jonas Lona, offered three briefs to address
10  certain issues regarding standing and the admissibility of
11  evidence.[1]  Tr. 225:7-19.  The Court declined to accept the
12  briefs for several reasons.  Tr. 225:20-23.  Nevertheless, the
13  Court resolved each of the issues Ms. Diemer raised and allowed
14  her to act as special counsel to Lona in order to assist Mr.
15  Duperrault throughout trial.[2]

16      **D.    The Parties' Stipulations**

17      For purposes of trial, the parties have stipulated: (1)
18  Abreu is the moving party and has the burden of proof as to
19  whether Lona was an actual or ostensible partner of Turi in Time
20  Zone; and (2) the amount of Abreu's claim is $439,000.

21  / / / /

22

23  [1] It is unclear why Ms. Diemer did this. The Court assumes it is
    because Ms. Diemer was acting as Jonas Lona's counsel and Corrina
24  Lona's special counsel, vacillating between the two as she deemed
    appropriate. See, e.g., Tr. 4:12-13; 13:18-20; 14:25-15:1; 15:16-
25  19; 595:10-15; Docket #242.

26  [2] See, Tr. 36:10-38:1; 41:8-44:13; 113:4-6; 113:12-116:17;
    116:25-120:19; 215:8-216:9; 217:13-218:11; 219:5-225:6; 229:17-
27  240:10; 164:12-165:12; 289:10-292:7; 293:4-294:10; 689:16-690:20.

28

Memo. Decision After Trial.            4

II.  **FACTUAL BACKGROUND**

    A.  **1994 - 1997: Turi and Lona Meet, Travel and Form Time Zone as a General Partnership**

    In 1994, Turi was working as a manager for a company that sold watches at trade shows. Tr. 470:25-471:19. That same year, Lona began to work for the company. Tr. 472:11-25. Turi and Lona worked together at this company until late 1996 or early 1997. Tr. 473:16-474:1. Subsequently, Turi and Lona traveled together to trade shows in Hong Kong, Argentina and the Philippines to explore starting a watch business together. Tr. 474:4-18; 608:20-609:16.

    On March 21, 1997, in furtherance of the plan to start a watch business with Lona, Turi filed a Fictitious Business Name Statement ("FBS") to secure the name "Time Zone." Tr. 470:10-11; 474:6-20; 475:15-476:5. The FBS was signed only by Turi and identified the business as a general partnership with Turi and Lona as the general partners. Ex. 1; Tr. 607:13-608:2. Turi testified that Lona did not know he had put her name on the FBS, and had not authorized the use of her name. Tr. 475:8-17.

    While it is unclear when the relationship started, how long it lasted, or whether it continued at the time of trial, during the time period relevant to this matter, Lona and Turi had a romantic relationship. Tr. 480:12-481:17.

    B.  **Time Zone's Pre-Paid Phone Card Business**

    Time Zone began selling pre-paid phone cards in 1998. Tr. 456:16-23. Time Zone purchased phone cards from distributors such as Abreu and sold them to convenience stores which then resold them. Time Zone's profit was a percentage of the face-

Memo. Decision After Trial.             5

1  amount of each card.  For example, Time Zone would buy a $10

2  phone card for 65% of its face value, or for $6.50.  The

3  convenience store that sold the phone card would keep 25% of the

4  $10 purchase price.  Time Zone's profit was the remaining 10% of

5  the $10 purchase price.  Tr. 458:14-459:19.

6      C.    1998 - 2001: Lona's Role at Time Zone

7      Turi testified that he hired Lona in late 1998 to assist him

8  with opening accounts at the convenience stores.  Tr. 461:23-

9  462:7.  In 1999, Time Zone also began selling phone cards to

10  other phone card distributors.  Tr. 483:23-484:2.  Lona had

11  authority to begin relationships with these distributors.  Tr.

12  485:6-25.  In 2001, Lona worked full time running the Time Zone

13  office while Turi and various drivers distributed phone cards to

14  the convenience stores.  Tr. 480:1-11; 481:24-483:7; 484:10-22;

15  485:6-16; 713:3-5.

16      Turi testified that he viewed Lona as an independent

17  contractor and he paid her $150 per day plus a commission of

18  approximately half percent of whatever she sold to distributors

19  who came to the office to pick up phone cards.  Tr. 462:11-464:8;

20  488:1-7; 617:4-14; 618:6-25.  Turi further testified that in

21  2001, he was paid approximately $36,000 from Time Zone while Lona

22  was paid $78,000.  Tr. 650:15-23; 652:24-653:9.  Turi testified

23  that the $78,000 that Lona received was salary plus commissions

24  and was not from the profits of the business itself.  Tr. 487:17-

25  488:7; 617:10-11; 653:9-16.  He also testified that he never gave

26  her a W-2, a W-4, or a 1099 form and never filed payroll tax

27  returns or withheld social security taxes.  Tr. 617:14-619:6.

28

Memo. Decision After Trial.          6

1    Lona testified that during the period relevant to this

2  matter she ran the Time Zone office on a full-time basis and also

3  did interior decorating and landscaping on a part-time basis.

4  Tr. 709:18-21; 713:3-5; 729:12-17.  Lona testified that her

5  amended federal tax return for 2001 showed $400,000 in income for

6  herself and her husband, that her husband's salary was

7  approximately $45,000, and that Lona received $78,000 from Time

8  Zone.  Tr. 709:15-710:2.  Lona testified that while she worked

9  full-time at Time Zone, and her husband's "main" job was as a

10  mechanic for Monterey Mushroom, they earned more than $277,000

11  from their side-jobs.  Tr. 709:18-710:5; 711:9-19; 712:23-713:7;

12  729:12-21.

13    Lona's testimony regarding her income was confusing,

14  contradictory and inconsistent.  Tr. 709:15-740:25.  No tax

15  returns, W-2s, 1099s or similar documents were offered in

16  evidence.  In addition, Lona was convicted of felony tax evasion

17  - apparently for years relevant to this matter.  Tr. 708:20-

18  709:1.

19    **D.  Abreu's Business with Time Zone**

20    Between January and December 2001, Abreu sold approximately

21  $5 million worth of phone cards to Time Zone (with an approximate

22  retail value of $7 million).  Tr. 24:12-14; Ex. S-1.  Initially,

23  Abreu accepted Time Zone checks for payment and normal payment

24  terms were 2 weeks.  Tr. 31:8-14; 33:18.  In late January 2001, a

25  Time Zone check for $57,000 was returned for insufficient funds

26  and Abreu thereafter required Time Zone to pay with cash or

27  third-party checks written to Time Zone by its convenience store

28

1  customers.  Tr. 31:14-32:3.  Despite this change in terms, Time

2  Zone continued to fall behind in its payments.  Ex. S-1.

3      Abreu testified that he first met Lona in March 2001.  Tr.

4  26:9-10; 253:23-255:16.  Lona testified that this first meeting

5  was in May 2001. Tr. 705:9-17.  According to Abreu, at their very

6  first meeting Lona told Abreu that she and Turi had previously

7  distributed watches, but that business had dried up, so they had

8  gone to Latin America to explore starting a watch distribution

9  business.  After trying various ventures, Turi and Lona had begun

10  to sell phone cards.  Tr. 28:3-15.  Abreu testified that at this

11  first meeting, Lona also told him that she had invested $100,000

12  in Time Zone and was working very hard to make the business

13  successful.  Tr. 29:19-30:4.

14      Abreu also testified that when he first began supplying Time

15  Zone with phone cards, he believed that Turi was the sole owner

16  of Time Zone.  Tr. 128:8-12.  By mid-2001, however, after meeting

17  Lona and regularly visiting the Time Zone office for this

18  approximate 6 month period, Abreu began to believe that Turi and

19  Lona were partners in Time Zone.  Tr. 129:3-16.[3]

20      E.    Summer 2001: Lona's Plans to Reduce Time Zone Debt

21      By the summer of 2001, Time Zone owed Abreu approximately

22  $250,000.  Ex. S-1.  Abreu testified that in late June or early

23  July, Lona told him of her plan to pay off or reduce the Time

24

25  [3]  This testimony came from Abreu's deposition taken in 2002.

26  Tr. 121:16-132:19. It is unclear whether counsel for Lona used
   this testimony to impeach Abreu or to refresh his recollection.

27  Whatever the intended purpose, the deposition testimony was
   consistent with Abreu's other testimony in this proceeding.

28

Memo. Decision After Trial.          8

1  Zone debt.  According to Abreu, Lona planned to get a line of

2  credit secured by her house which she intended to use to purchase

3  shares of stock in a company called Soluminaire[4], then sell this

4  Soluminaire stock and use the proceeds to pay off the line of

5  credit, and then use the line of credit to repay Abreu.  Tr.

6  34:2-7; 34:15-22; 102:2-20; 103:17-22.  Abreu testified

7  that Lona made this promise to use the line of credit on more

8  than one occasion.  Tr. 35:15-21; 40:9-16.

9      Turi and Lona both testified that in July 2001, Abreu and

10  Turi met at Turi's house to discuss repayment of the Time Zone

11  debt.  Tr. 636:5-8; 700:2-701:6.  Lona testified that she was

12  present but claimed she did not participate in this meeting.  Tr.

13  663:9-16; 700:23-701:3.  Turi testified that during the meeting,

14  without prompting, Lona volunteered that Time Zone was not her

15  business.  Tr. 636:5-637:2; 638:16-24.  Lona, on the other hand,

16  testified that she responded that Time Zone was not her business

17  after Abreu specifically asked Lona to help Turi out.  Tr.

18  704:10-20.

19      On August 27, 2001, Abreu obtained a cashier's check in the

20  amount of $40,000, made payable to Lona.  Ex. 7.  Abreu testified

21  that the purpose of the check was to buy 40,000 shares of the

22  Soluminaire stock Lona had purchased with the proceeds of her

23  credit line.  Tr. 51:19-25; 52:6-7; 102:22-103:16.  Abreu stated

24  that Lona was not at the Time Zone office when he delivered the

25  check, so he left it with Turi.  Tr. 52:4-5.  Lona and Turi

26  _____

27  [4]  The record is unclear as to the exact name of this company and
   its spelling here is phonetic only.

28

Memo. Decision After Trial.              9

endorsed the check and deposited it in Time Zone's bank account.
Tr. 578:16-21.[5]

###    F.    Fall 2001: Abreu's Belief that Turi and Lona Were Partners

Abreu testified that by late-August 2001, he had grown increasingly concerned about the growing delinquency in Time Zone's payments, and he began inquiring about Lona's promised use of a line of credit to repay him. Tr. 33:20-22. At this point, Lona and Turi began telling Abreu that Lona was simply an employee of Time Zone. Tr. 33:10-23; 52:17-53:7; 89:20-90:5; 131:10-132:13. In response, Abreu asserted that he knew that Turi and Lona were partners and he wanted to assist them in coming up with a plan to repay the debt. Tr. 268:3-10. Abreu testified that Lona's response was "We're sorry. We want to pay you back. We're trying the best we can." Tr. 268:11-15. Abreu testified that if Lona had told him in August 2001 that she was

---

[5]  Turi claims that *he* sold the stock to Abreu as an "investment." Tr. 575:3-6; 577:13-15. While this might explain the deposit of the $40,000 check into Time Zone's account if Time Zone were a sole proprietorship, Turi's explanation simply does not make sense and, in fact, none of the testimony regarding this stock transaction makes sense. When Abreu purchased the stock, Time Zone owed Abreu approximately $500,000. Abreu was apparently already holding 112,000 shares of Turi's shares of Soluminaire stock as collateral for the Time Zone debt. Ex. S-1; Tr. 665:14-18. If, in fact, Time Zone was Turi's sole proprietorship and he owed Abreu $500,000, why didn't Turi simply *give* Abreu more shares to reduce the debt? And why, then, did Abreu later give Turi back the 112,000 shares he was holding as collateral, but keep the 40,000 he had purchased? See, Tr. 665:14-667:10. The only explanation that makes sense is that the 40,000 shares that Abreu purchased were, in fact, Lona's shares. This is consistent with Lona's stated plan to take out a credit line on her home, buy stock, sell it, and then use the credit line to repay Abreu.

Memo. Decision After Trial.                10

1  not a partner and was not going to do anything to help retire the
2  debt, Abreu would not have continued to sell phone cards to Time
3  Zone.  Tr. 270:16-271:5.  Abreu further testified that he
4  continued to do so *because of* Lona's representations regarding
5  her use of a line of credit to repay him.  Tr. 94:7-14; 104:21-
6  23.

7       In late-September or early October 2001, on behalf of Time
8  Zone, Turi signed a document called "Discount Contract for Phone
9  Card Distributors."  Ex. B.  Abreu testified that he sent such a
10 contract to every one of his distributors and that he only needed
11 one signature from each distributor.  Tr. 110:5-17.

12      In late-October 2001, at Abreu's urging and after discussion
13 with Turi and Lona, Time Zone resumed paying Abreu by check.  Tr.
14 32:7-15; 142:6-9; 268:18-269:2; 510:11-12.  Abreu testified that
15 accepting checks was a matter of convenience for him as it saved
16 a significant amount of time.  Tr. 32:17-21.  Time Zone continued
17 to issue checks that were dishonored by the bank.  Tr. 86:10-15;
18 534:23-535:13; 580:22-23; 581:13-16.

19      On November 19, 2001, Abreu and Turi signed a document
20 called "Contract Between Intertel and Time Zone Distributing,"
21 which identified payment terms for retiring the Time Zone debt.
22 Ex. A.  Abreu testified that he wanted both Lona and Turi to sign
23 this document, but relented when they refused to sign anything
24 with Lona's name on it because Lona maintained that she was not a
25 partner.  Tr. 106:6-107:4.

26      Abreu testified that in November 2001, concerned that Lona
27 and Turi were continuing to deny that they were partners, Abreu
28

Memo. Decision After Trial.          11

1   went to the Santa Clara County Clerk's office and obtained a copy
2   of Time Zone's FBS.  Tr. 45:4-46:1.  Abreu said he then
3   confronted Turi and Lona with the FBS.  Tr. 46:4-7.  Lona
4   allegedly responded that she had not signed the document and did
5   not know anything about it.  Tr. 46:8-10.  Abreu testified that
6   he reminded them that Lona had stated that she and Turi had
7   started various business ventures together, and asserted that he
8   knew that Lona and Turi were partners.  Tr. 46:11-15.

9        In late November, Time Zone essentially stopped purchasing
10  cards from Abreu.  Tr. 80:17-19; 196:21-25.  In December 2001,
11  Time Zone made no purchases from Abreu on a credit basis and made
12  only two additional cash purchases from Abreu in January 2002.
13  Tr. 533:12-23.

14       **G.    December 2001: "We failed . . ."**

15       On December 4, 2001, Turi and Lona sat in a car in front of
16  Abreu's house waiting for him and finally left three letters on
17  his doorstep when he did not return.  Tr. 546:14-19; 547:13-19;
18  619:8-15.  The first letter was unsigned and stated in part, "We
19  tried desperately to get in touch with you tonight. . . . Please
20  call me to discuss our options – we want to help – we don't want
21  anyone to lose.  Please forgive us for what happened ..[.]"  Ex.
22  2.  The second letter was also unsigned and stated in part, "I'm
23  sorry we missed you!  We've been waiting in front of your
24  house[.] . . . Jose – seriously, if your offer still stands –
25  Corrina & I would love your help in trying to save each others
26  [sic] companies[.]"  Ex. 3.  The third letter was signed "Your
27  friends Corrina & Tim" and stated in part, "[W]e welcome your
28

Memo. Decision After Trial.              12

1  help, expertise, friendship & support. . . .  Corrina and I care

2  about you greatly - and are willing to go all the way to correct

3  what has been done.  Please help us help you."  Ex. 4.

4       Turi testified that while Lona was in the car with him for

5  the entire time, and saw Turi writing the letters, Lona did not

6  read them, did not participate in drafting them and Turi did not

7  consult her in their drafting.  Tr. 545:24-547:11; 619:16-620:9;

8  623:3-15.

9       Turi admitted at trial that the "we" in the letters referred

10  to himself and Lona - but not the other Time Zone employees.  Tr.

11  620:10-621:18.  When asked why he would state that he and an

12  independent contractor wanted to help, Turi testified that Lona

13  was an "integral part of the business" and Turi needed her help

14  "in order to pull this off."  Tr. 622:1-6.

15       On December 7, 2001, Abreu met with Turi and Lona to discuss

16  a plan for repayment of the Time Zone debt.  Tr. 43:1-10; 531:23-

17  532:14.  Lona testified that Turi asked her to come to the

18  meeting.  Tr. 706:6-11.  Turi testified that Abreu did not ask

19  for Lona to be present, but that she "tagged along" because Lona

20  was going to help Abreu redecorate his office even though she did

21  not bring any interior decorating materials to the meeting.  Tr.

22  552:1-8.

23       Abreu testified that at his request, Eugene Katz accompanied

24  him to this meeting where Katz met Lona for the first time.  Tr.

25  39:5-10; 155:1-4; 155:24-156:3.[6]  Katz took notes during the

26  _____

27  [6]  Katz met Abreu in 1996 through Abreu's sister, whom Katz dated
    from 1998 through February of 2007.  Tr. 154:2-8; 168:14-169:1.

28  Katz testified that in 2007 Abreu's sister rejected Katz's

Memo. Decision After Trial.          13

1    meeting which he stated was out of habit rather than a request

2    from Abreu.  Tr. 156:9-11; 157:24-158:2.

3        Katz, Abreu and Turi all testified regarding this meeting.

4    Katz testified that Lona repeatedly stated that she felt horrible

5    about the situation that she had put Abreu in, that she wanted to

6    "make things right" and that she was not a "bad person."  Tr.

7    162:12-16.  Katz also testified that during the meeting, Lona

8    never claimed that she was not Turi's partner, never asserted

9    that she was just an employee of Time Zone, never said she was

10   just trying to help Turi out.  Tr. 163:5-12.

11       Turi testified that Abreu asked to be paid $150,000 in

12   "upfront money," which Turi stated he was unable to provide.  Tr.

13   569:18-570:3.  Turi testified that he offered alternatives, which

14   Abreu turned down.  Tr. 570:3-6.  According to Turi, Abreu then

15   asked Lona to contribute money which she declined to do because

16   she claimed Time Zone was not her business or her debt.  Tr.

17   570:6-11.  Contrary to Turi's version of this event, Abreu and

18   Katz testified that Lona promised to give Abreu her Lexus, stock

19   certificates, jewelry and $100,000 of a $200,000 line of credit.

20   Tr. 36:5-9; 38:9-15; 39:5-6; 40:25-41:7; 162:17-163:2.

21       Lona and Turi both denied that Lona offered to use any of

22   her personal property to help pay the Time Zone debt.  Tr.

23   570:12-19; 571:11-12; 699:5-11; 705:21-706:16; 707:1-3.

24   Contrary to Turi's testimony that Lona knew nothing about the

25   _____

26   marriage proposal. Tr. 169:2-3.  Katz also worked for Abreu from
     March 2003 through April 2005, but was not working for Abreu at
27   the time of the December 7 meeting, or at the time of the trial.
     Tr. 153:22-24; 154:9-25; 179:2-3.
28

Memo. Decision After Trial.            14

1  December 4 letters, Abreu testified that Lona discussed the
2  letters with him at the December 7 meeting.  Tr. 49:9-14; 50:11-
3  14; 51:10-15.

4      Katz testified that his impression from the meeting was that
5  Turi and Lona were business partners who were taking
6  responsibility for the Time Zone debt because Turi offered
7  repayment plans and Lona offered personal property to be used to
8  to reduce the balance owed – all so that Time Zone could resume
9  purchasing phone cards from Abreu.  Tr. 163:13-18; 167:4-15;
10  170:1-3.

11      Katz testified that he never heard Turi or Lona specifically
12  say that Lona was Turi's partner or was an owner of Time Zone but
13  she implied that she was a partner when she stated that she was
14  willing to give Abreu her personal property to start repaying
15  Time Zone's debt.  Tr. 170:4-14; 171:7-18; 173:13-174:8.

16      **H.    Early 2002: Time Zone Becomes U&I – Lona named CEO**
17      In an apparent effort to be free of Time Zone's debts, in
18  early 2002, Turi asked Alejandro Bernal, one of Time Zone's
19  former drivers, to incorporate a phone card business entitled,
20  U&I Telecom, Inc. ("U&I").  Tr. 626:20-627:15; 678:11-18.  Turi
21  testified that he asked Bernal to file the articles of
22  incorporation because Turi first "wanted to square everything up
23  with [Abreu] and other vendors" and "try to make a fresh start."
24  Tr. 683:22-685:2.

25      A Statement of Information filed with the Secretary of State
26  on April 10, 2002 named Lona as the chief executive officer and
27  the sole director of U&I.  Ex. 14.  Turi testified that he paid

28

Memo. Decision After Trial.              15

1  the filing fee to incorporate U&I, ran the day to day operations
2  and collected all the money.  Tr. 678:11-679:1; 683:19-21.
3  Despite the fact that he ran U&I (apparently as a continuation of
4  Time Zone), Turi testified that he had no idea how or why Lona
5  was named on the Statement of Information as the chief executive
6  officer and sole director.  Tr. 629:7-11; 679:6-12.  Lona
7  admitted she worked for U&I from January to November 2002.  Tr.
8  714:6-11.

9      I.    November 2002: Attempted Sale of U&I – Turi and Lona
              Identified as Business Partners
10
11         On November 9, 2002, Turi "purchased" U&I from Bernal for a
12  nominal sum.  Tr. 627:17-628:2; Ex. CC.  On or about November 15,
13  2002, Turi entered into a contract to sell the assets of U&I to
14  an individual named Charlie Choi (the "Purchase Agreement").  Ex.
15  5.  The Purchase Agreement states, in pertinent part, "*Tim J.*
16  *Turi and Corrina Lona, his business partner,* agree to work for 30
17  days after Purchase Agreement date for the Buyer without
18  compensation to help the Buyer retain existing customers and make
19  smooth [sic] transition."  Ex. 5 at ¶ 4(2).  The Purchase
20  Agreement also provided that "Both *Tim Turi and Corrina Lona*
21  *agree that they will not directly compete* with the Buyer for 5
22  years from the Purchase Agreement date[.]"  Ex. 5 at ¶ 5.  The
23  Purchase Agreement was signed by Turi as the president/owner of
24  U&I and was signed by Lona as a witness.  Ex. 5.  Turi admitted
25  that he had negotiated some of the Purchase Agreement terms, that
26  he had made some changes to the Purchase Agreement before signing
27  it, and that he had read the Purchase Agreement.  Tr. 624:3-22.
28  Turi also admitted that he knew that the Purchase Agreement

Memo. Decision After Trial.           16

1   prevented Turi *and* Lona from competing with Choi for five years.

2   Tr. 661:2-8.  Turi claimed, however, that he did not notice the

3   paragraph that identified Turi and Lona as business partners.

4   Tr. 624:23-625:16; 661:2-8.  Turi also claimed that Lona never

5   read the Purchase Agreement and did not participate in the

6   negotiations.  Tr. 624:5-13; 670:5-13.

7        As part of this transaction, Choi wrote several checks that

8   Lona held pending closing but ultimately returned to Choi because

9   the sale was never consummated.  Tr. 656:12-657:2.

10       On March 13, 2003, Turi filed a Statement of Information

11  with the Secretary of State, which removed Lona as an officer and

12  director of U&I.  Ex. DD.

13       **J.   Summer 2003: Turi and Lona File Chapter 7 Cases**

14       On June 16, 2003, Lona filed this chapter 7 case and on July

15  16, 2003, Turi filed his chapter 7 case.  Turi's case was

16  determined to be a "no asset" case.  Abreu and others filed

17  adversary proceedings against Turi, seeking to have the debts

18  owed by Turi determined to be nondischargable.  The parties

19  subsequently settled the adversary proceedings and Turi received

20  his discharge on March 19, 2007.

21

22  **III. <u>DISCUSSION</u>**

23       **A.   Introduction**

24       Based on the testimony and evidence produced at trial (or

25  the absence thereof), the following facts appear to be undisputed

26  and the Court takes them to be true: (1) Neither Lona nor Turi

27  ever specifically told Abreu that Lona was a partner or owner of

28

Memo. Decision After Trial.          17

1  Time Zone; (2) Lona never signed any contracts between Abreu and

2  Time Zone; (3) Abreu never asked for, nor received a credit

3  application from Lona or from Turi; (4) no invoices were ever

4  addressed to Lona personally; (5) all of the forms filed with the

5  City of San Jose were signed by Turi doing business as Time Zone

6  as a sole proprietorship; (6) Time Zone's bank account was in the

7  name of Tim Turi, dba Time Zone Distributing and Lona did not

8  have signing authority on it; (7) Turi did all of the hiring for

9  Time Zone and made all decisions regarding whether to extend

10  credit; (8) Turi negotiated prices, dealt with bounced checks and

11  negotiated credit with Abreu; and (9) Time Zone's credit

12  applications and personal guaranties were filled out by Turi as

13  an individual.

14  **B.    Applicable Law**

15      State law determines the validity of a creditor's claim.

16  <u>Grogan v. Garner</u>, 498 U.S. 279, 283 (1991) (citation omitted).

17  Here, the validity of Abreu's claim depends entirely on Abreu

18  proving the existence of an actual partnership or partnership by

19  estoppel (ostensible partnership) under California law.

20  **C.    Burden of Proof**

21      In California, the burden of proving a partnership is on the

22  party alleging it.  <u>Mercado v. Hoefler</u>, 190 Cal. App. 2d 12, 16

23  (Cal. Dist. Ct. App. 1961) (citing <u>Milstein v. Sartain</u>, 133 P.2d

24  836, 841 (Cal. Dist. Ct. App. 1943)).  Here, the parties have

25  agreed that Abreu has the burden of proof with respect to whether

26  Lona was an actual or ostensible partner of Turi/Time Zone.  <u>See</u>,

27  Abreu Trial Brief at 3:6-7.

28

Memo. Decision After Trial.              18

1    The existence of a partnership is a question of fact that is

2  determined by a preponderance of the evidence.  Weiner v.

3  Fleischman, 816 P.2d 892, 900 (Cal. 1991); Calada Materials Co.

4  v. Collins, 7 Cal. Rptr. 374, 376 (Cal. Ct. App. 1960) (citation

5  omitted).  The preponderance of the evidence standard requires

6  the trier of fact "to believe that the existence of a fact is

7  more probable than its nonexistence."  In re Michael G., 63 Cal.

8  App. 4th 700, 709 n.6 (Cal. Ct. App. 1998).

9        D.    Witness Credibility

10    The key evidence in this case is from conflicting witness

11  testimony regarding how - or whether - certain events unfolded

12  between 1998 and 2002.  Accordingly, the credibility of the

13  witnesses is a significant factor in the Court's decision.

14    Where the testimony of a witness is not believed, the trier

15  of fact may simply disregard it.  Bose Corp. v. Consumers Union

16  of U.S., Inc., 466 U.S. 485, 512 (1984).  The Court's

17  determinations regarding credibility are given due regard on

18  appeal.  Anderson v. City of Bessemer City, N.C., 470 U.S. 564,

19  573-74 (1985).

20    While each of the witnesses may appear to have biases, the

21  Court found some witnesses to be more credible than others and

22  thus affords their testimony greater weight.

23        1.    Jose Abreu

24    Abreu was a credible witness.  It would have been convenient

25  for Abreu to claim that both Lona and Turi stated, in no

26  uncertain terms, on numerous occasions, that Lona and Turi were

27  partners in Time Zone.  This would have strengthened his case

28

Memo. Decision After Trial.            19

considerably.  However, he freely admitted that neither of them
ever specifically claimed that Lona was a partner.  Instead,
Abreu claims that he was led to believe that Lona was a partner
by Turi and Lona's conduct.  He also claims that his belief was
later confirmed by documentary evidence (i.e., the FBS, the U&I
documents).  His candor strengthens his credibility.

### 2.    Tim Turi

Tim Turi was not a credible witness.  Turi had a romantic
relationship with Lona.  Whether that relationship existed at the
time of the trial is unknown but the relationship provided him
with a motive to shape his testimony to protect her. The more
significant fact, however, is that Turi's testimony regarding the
issues at the heart of this case was so absurd as to be
incredible.

First, Turi testified that Lona did not know that she was
named as a partner on the FBS.  The Court cannot believe that
after traveling extensively with Lona and planning to start their
own business, Turi "forgot" to inform Lona that he included her
as a partner on the FBS or did not seek her approval before doing
so.

Second, Turi testified that Lona did not know what the
December 4, 2001 letters said.  However, in the letters, Turi
referred to himself and Lona as "we" on numerous occasions,
stated "Corrina and I care about you greatly – and are willing to
go all the way to correct what has been done," and also stated,
"Corrina & I would love your help in trying to save each others
[sic] companies."  The Court simply does not believe that in the

Memo. Decision After Trial.            20

1   four hours that Lona and Turi sat in a car outside Abreu's house,
2   Lona did not assist Turi in writing the letters and was not asked
3   by Turi for input.  Turi's version of events is also contradicted
4   by Abreu's testimony regarding the December 7, 2001 meeting at
5   which Lona appeared aware of the contents of the letters.

6        Third, Turi testified he did not know how or why Lona was
7   listed as the chief executive officer and sole director of U&I on
8   its original Statement by Domestic Stock Corporation.  The Court
9   finds this testimony incredible – and the name U&I itself
10  directly and absurdly contradictory of Turi's version of events.
11  Turi admitted the only reason that he had Bernal incorporate U&I
12  was so Turi could negotiate with Time Zone's creditors and, if
13  that failed, "try to make a fresh start[.]"  Turi testified at
14  trial that he controlled U&I from the start.  Thus, the Court
15  simply does not believe that Turi had no hand in filling out the
16  paperwork that identified Lona as the chief executive officer and
17  sole director.  While U&I may have been formed to avoid Time
18  Zone's obligations, for all practical purposes, U&I was a
19  continuation of Time Zone's business, with the same structure,
20  essentially the same employees, and with Lona and Turi as its
21  principals.

22       Fourth, the Court finds it incredible that while Turi
23  admitted to being aware of a 5-year non-compete clause for both
24  he and Lona in the Purchase Agreement for the U&I assets, he did
25  not *see* the provision that identified Turi and Lona as business
26  partners.  The Court also does not believe Turi's testimony that
27  Lona was unaware of the terms of the Purchase Agreement – she
28

Memo. Decision After Trial.          21

1  signed it as a witness and she was to be bound by the 5-year non-
2  compete provision.

3      Finally, Turi's testimony is contradictory on the critical
4  issue of whether anyone ever asserted that Lona was a partner.
5  For example, when asked on direct examination whether anyone told
6  Turi that Lona was an owner or partner of Time Zone, Turi stated
7  in no uncertain terms, "I've never heard it from anybody."   Tr.
8  572:7-10.[7]  Thereafter, Turi contradicted himself on at least
9  three occasions, testifying that: (1) Abreu first asserted that
10 Lona was a partner in February 2002; (2) Abreu first asserted
11 that Lona was a partner in March 2002; and (3) although Abreu did
12 not assert that Lona was a partner in February 2002, Katz did
13 make such an assertion.   Tr. 531:17-22; 572:13-573:14; 637:16-18.
14 The inconsistencies in Turi's testimony render it unbelievable.

15          **3.  Eugene Katz**

16     Eugene Katz was a credible witness.   Mr. Katz testified
17 regarding the December 7, 2001 meeting with Turi and Lona which
18 he attended at Abreu's request.   During his examination, Mr. Katz
19 revealed that he had once had a romantic relationship with
20 Abreu's sister and that Katz had worked for Abreu for a two year
21 period after the December 7 meeting.   As of the date of the
22 trial, however, Mr. Katz's relationship with Abreu's sister had
23 ended and he was no longer working for Abreu.   Katz appeared to
24 have no previous relationship with either Lona or Turi and no

25 _____

26 [7]  Lona's counsel attempted to minimize Turi's statement by
27 adding, "Well, as of that date."   Tr. 572:11.   Turi's testimony,
   however, was unequivocal and the Court will not give Turi the
28 benefit of counsel's explanation.

Memo. Decision After Trial.          22

1    ulterior motive was uncovered upon cross examination.

2         **4.  Corrina Lona**

3        Lona chose to testify only in rebuttal.  Her testimony thus
4    had limited utility.  Beyond that, Lona's testimony was simply
5    incredible on all points she addressed.

6        Lona testified that she never offered to pay any debts of
7    Time Zone.  This is in direct contradiction to the testimony of
8    Abreu and Katz.

9        Lona's testimony regarding her 2001 income taxes was
10   entirely contradictory, inconsistent and confusing.  During
11   cross-examination, Lona testified that her amended tax return for
12   2001 showed that she and her husband had earned $400,000 in 2001.
13   When questioned as to what that amount was comprised of, Lona
14   initially confirmed that she earned $78,000 working full time at
15   Time Zone and testified that her husband earned $45,000 as a
16   mechanic and that they had earned an additional $277,000 through
17   her husband's "side jobs," through Lona's occasional interior
18   decorating jobs, and through landscaping jobs that they both did.
19   Thereafter, Lona changed her story and testified that she earned
20   more than $78,000 from Time Zone in 2001.  When asked how much
21   more, Lona first stated that it was more than $100,000 and more
22   than $200,000, but then backtracked and testified that she only
23   received $78,000.  Lona then tried to explain away the
24   discrepancy by testifying that the amounts in her amended tax
25   returns were averages of income over many years and the amounts
26   were determined by the Franchise Tax Board and Lona's CPA.  Then,
27   inexplicably, Lona could not remember anything about how much she

28

Memo. Decision After Trial.          23

1    had reported in income in 1999, 2000 or 2001 and again claimed
2    that the amounts listed in her tax returns were determined by her
3    CPA and the Franchise Tax Board.

4       Because Lona's testimony regarding her offers to pay Time
5    Zone debts was contradicted by other credible testimony and her
6    testimony as to her income was limited, inconsistent and
7    confusing, the Court affords her testimony little weight.

8           **5.    Alvaro Amador**

9       Alvaro Amador was not a credible witness.  Suffice it to
10   say, he appeared to be seeking recovery of the debt owed to his
11   company by Time Zone and would say or do anything to accomplish
12   that goal no matter how far he strayed from reality to achieve
13   it.

14          **6.    Distributors Nguyen, Bobesku and Diaz**

15      Lona also offered the testimony of three phone card
16   distributors, Swan Nguyen, Romulus Bobesku, and Mauricio Diaz
17   (the "Distributors") to support her case that she was not thought
18   to be a partner in the Time Zone business.  While the Court found
19   the Distributors to be credible, their testimony was of limited
20   relevance to the issues in this trial and did not ultimately
21   weigh in the decision.

22          **7.    Marysol Solorio**

23      Lona also called Marysol Solorio, an employee of Time Zone.
24   Like the Distributors, her testimony was credible, but her lack
25   of knowledge regarding the critical issues limited its relevance.
26   / / / /
27   / / / /

28

Memo. Decision After Trial.              24

E.    **Partnership, in General**

In California, partnerships formed after 1996 are governed by California's Uniform Partnership Act of 1994 (the "UPA") (Cal. Corp. Code § 16100, et seq.).  Under the UPA, liability for the debts of a partnership may be premised on an actual partnership pursuant to California Corporations Code § 16202, or partnership by estoppel pursuant to California Corporations Code § 16308(a). Once partnership is established, California Corporations Code § 16308(a) provides that unless otherwise agreed by the claimant or provided by law, all partners are jointly and severally liable for all partnership obligations.  California Corporations Code § 16308(a) (West 2008).  Whether a partnership exists is a question of fact to be determined by the trial court.  <u>Spier v. Lang</u>, 4 Cal. 2d 711, 716 (Cal. 1935); <u>Associated Piping & Eng'g v. Jones</u>, 17 Cal. App. 2d 107, 112 (Cal. Dist. Ct. App. 1936).

F.    **Actual Partnership**

Pursuant to the UPA, "[T]he association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership."  Cal. Corp. Code § 16202(a) (West 2008).

Ordinarily, the existence of an actual partnership is evidenced by the right of the respective parties to participate in the profits and losses of the business, the contribution by the partners of either money, property or services and some degree of participation by the partners in the management and control of the business.  <u>Billups v. Tiernan</u>, 11 Cal. App. 3d 372, 379 (Cal. Ct. App. 1970) (some degree of participation in

Memo. Decision After Trial.            25

1  management and control of business); <u>Mercado v. Hoefler</u>, 190 Cal.

2  App. 2d 12, 16-17 (Cal. Dist. Ct. App. 1961) (contribution of

3  money, property or services); <u>Constans v. Ross</u>, 106 Cal. App. 2d

4  at 386 (sharing in profits and losses of business).  The fact,

5  however, that profits and losses are not shared equally does not

6  necessarily compel a conclusion that no partnership existed.

7  <u>Constans v. Ross</u>, 106 Cal. App. 2d at 389.  Nor does the unequal

8  apportionment of management duties compel a conclusion of no

9  partnership.  <u>Constans v. Ross</u>, 106 Cal. App. 2d at 388-89

10 (citations omitted); <u>Associated Piping & Eng'g v. Jones</u>, 17 Cal.

11 App. 2d at 111.  It is immaterial if the parties do not designate

12 their relationship as a partnership or if they do not know that

13 they are partners, for intent may be implied from their acts.

14 <u>Associated Piping & Eng'g v. Jones</u>, 17 Cal. App. 2d at 110

15 (citations omitted); <u>Thompson v. O.W. Childs Estate Co.</u>, 90 Cal.

16 App. 552, 554 (Cal. Dist. Ct. App. 1928) (citation omitted).

17     Where the rights of a third party are involved, the

18 fundamental question is whether, based on the conduct of the

19 alleged partners, the third party had a right to believe that a

20 partnership existed.  <u>Hansen v. Burford</u>, 212 Cal. 100, 110 (Cal.

21 1931); <u>Associated Piping & Eng'g v. Jones</u>, 17 Cal. App. 2d 107,

22 111 (Cal. Dist. Ct. App. 1936).  As a result, each case is

23 adjudicated on its own facts and "very little value will be found

24 from any extended review of the authorities."  <u>Westcott v.</u>

25 <u>Gilman</u>, 170 Cal. 562, 569 (Cal. 1915); <u>Associated Piping & Eng'g</u>

26 <u>v. Jones</u>, 17 Cal. App. 2d 107, 111 (Cal. Dist. Ct. App. 1936).

27 / / / /

28

Memo. Decision After Trial.        26

1      Based on Lona and Turi's conduct and the surrounding

2  circumstances as a whole, the Court finds Abreu has sustained his

3  burden of proving that an actual partnership existed.

4      First, Lona and Turi's words and actions, when taken

5  together, evidenced an actual partnership.  When Abreu first met

6  Lona in March or May 2001, Lona informed Abreu that she had

7  invested $100,000 into Time Zone and was working hard to make the

8  business successful.  In June or July of 2001, when Time Zone's

9  debt continued to grow, Lona told Abreu that she was going to

10  help pay off the debt.  On various occasions after that, Lona

11  again promised to take out a credit line secured by her home and

12  use the credit line, her stock, her car and her jewelry as

13  payment of the debt owed to Abreu.

14      In August of 2001, when Abreu purchased 40,000 shares of

15  Soluminaire stock from Lona, she endorsed the $40,000 check and

16  deposited it into Time Zone's account.  The Court finds it highly

17  unlikely, if not outright incredible, that an employee or

18  independent contractor would invest this kind of money, would

19  offer to pay off her "employer's" debts or would offer to use her

20  own valuable personal property to do so.  This is not the conduct

21  of an employee.  It is the conduct of a partner in a business – a

22  person who shares in profits and losses of the business and has a

23  vested interest in its continuation.

24      The documentary evidence both before and after the time

25  period in question also supports a finding of an actual

26  partnership.  See, <u>Olive v. Turner</u>, 120 F. Supp. 478, 482-83

27  (W.D. Okla. 1954) (evidence of conduct both before and after the

28

Memo. Decision After Trial.      27

1   date of the transactions at issue is admissible in determining

2   the fact of partnership); <u>Cyrus v. Cyrus</u>, 64 N.W. 2d 538, 541-42

3   (Minn. 1954) (in determining whether a partnership exists,

4   evidence of conduct preceding alleged partnership is material

5   evidence of the parties' intent).  First, Turi filed a FBS,

6   listing Lona as a partner.  Despite Turi's unreliable testimony

7   to the contrary, the Court does not believe that this was a

8   decision made without consultation with Lona.  In fact, before

9   Turi filed the FBS, Lona and Turi discussed opening a business

10  together and traveled extensively to research that business.  The

11  fact that the business they engaged in was phone cards rather

12  than watches is immaterial.

13       Second, on December 4, 2001, Turi and Lona wrote three

14  letters to Abreu.  Each letter referred to Lona and Turi as "we"

15  multiple times - a fact Turi admitted at trial.  Turi testified

16  that he included Lona in the letter because she was "integral" to

17  the success of the business.  However, he later contradicted this

18  testimony when he stated that the assistance of his other

19  employees was also crucial.  The fact that Turi had other

20  employees at the time, but that he admittedly referred only to

21  himself and Lona in the letters supports a finding that Lona's

22  position with Time Zone was markedly different than that of a

23  mere employee.  The statements in the letters make it clear that

24  Turi and Lona believed they were jointly responsible for the debt

25  to Abreu and wanted to work together to pay off that debt.

26       For example, the first letter stated, "Please forgive *us* for

27  what happened - not because of our effort or our intentions -

28

Memo. Decision After Trial.          28

1  that *we failed* - just circumstances out of our control." The

2  second letter stated "Corrina & I would love your help in trying

3  to save *each others* [sic] companies." The third letter stated

4  "[W]e welcome your help, expertise, friendship & support. . . .

5  *Corrina & I* care about you greatly - and are willing to go all

6  the way to correct what has been done. Please - *help us help*

7  *you.* Your friends, Corrina & Tim." Turi's consistent use of the

8  first person plural when asking Abreu for assistance indicates

9  that Lona and Turi were partners who wanted to find a way to

10 continue their business. The fact that they were together at the

11 time they wrote the letters also supports a conclusion that the

12 letters constitute a joint statement of their ownership of the

13 business.

14     The documentation for the formation of U&I in which Lona was

15 named chief executive officer also supports a finding that her

16 role in Time Zone was not that of an employee. U&I was

17 admittedly set up to continue the Time Zone business free of its

18 creditors and her continuing role with U&I is consistent with her

19 role in Time Zone. When sale of U&I was contemplated, Turi

20 negotiated sale documents identifying Lona as a partner and

21 committing her to a 5 year non-competition agreement. Turi's

22 claim that she was unaware of these terms is simply incredible.

23     The fact that Lona appears to have only played a managerial

24 role in signing up new distributors and that Turi made most, if

25 not all, of the other management decisions does not preclude a

26 finding of actual partnership, especially where other evidence

27 points to the existence of a partnership. Constans v. Ross, 106

28

Memo. Decision After Trial.            29

1  Cal. App. 2d at 388-89 (citations omitted); <u>Associated Piping &</u>
2  <u>Eng'g v. Jones</u>, 17 Cal. App. 2d at 111.

3      The cumulative weight of the evidence - Lona's travels with
4  Turi to research business opportunities, her repeated promises to
5  use her personal property to reduce the debt, her deposit of
6  $40,000 into the Time Zone account, the handwritten letters, the
7  FBS in which she was named as a partner, the U&I documentation in
8  which she was named as the chief executive officer, the
9  documentation for the attempted sale of U&I in which she was
10  named as a partner and agreed to a 5-year non-competition clause
11  - all support a conclusion that her role was that of a principal
12  in the Time Zone business with all the benefits and burdens
13  associated with it.  The fact that her 2001 federal income tax
14  return indicated income of $400,000 despite her story that Time
15  Zone paid her only $78,000 for that year also supports a finding
16  that her involvement was far different than she or Turi have
17  tried to portray it.

18      Turi and Lona's denial that there was a partnership is of
19  little consequence.  First, neither of them was a credible
20  witness.  Second, the existence of a partnership is not
21  determined by the parties' designation of their arrangement.
22  <u>Greene v. Brooks</u>, 235 Cal App. 2d 161, 166 (Cal. Dist. Ct. App.
23  1965).  Instead, it depends primarily upon the intention of the
24  parties ascertained from the terms of any agreement, from the
25  parties' acts and from the surrounding circumstances as a whole.
26  <u>Id.</u>; <u>Constans v. Ross</u>, 106 Cal. App. 2d 381, 386-389 (Cal. Dist.
27  Ct. App. 1951).  Here, Turi and Lona's claims that there was no
28

Memo. Decision After Trial.          30

1  partnership are belied by their words, their actions and by a

2  substantial amount of documentary proof.  On this record, the

3  Court finds that an actual partnership existed.

4      **G.    Partnership by Estoppel**

5      The UPA provides that where there is insufficient evidence

6  of an actual partnership, partnership liability may arise by

7  estoppel.  The UPA provides for liability for one who, by words

8  or by conduct, purports to be, or consents to being represented

9  by another, as a partner in a partnership.  The purported partner

10  is liable to the person to whom the representation is made if

11  that person, relying on the representation, enters into a

12  transaction with the alleged partnership.  Cal. Corp. Code §

13  16308(a) (West 2008).  The conduct of the ostensible partner must

14  be sufficient to induce a reasonable and prudent person to

15  believe that a partnership exists and for that person to enter

16  into a transaction in reliance on that belief.  <u>Armato v. Baden</u>,

17  71 Cal. App. 4th 885, 898 (Cal. Ct. App. 1999) (citing <u>Crabbe v.</u>

18  <u>Mires</u>, 112 Cal. App. 2d 456, 459 (Cal. Dist. Ct. App. 1952)).

19      To prove partnership by estoppel, Abreu must show that: (1)

20  the acts and conduct of Turi and Lona were factually and legally

21  sufficient to lead Abreu to reasonably believe Lona was a

22  copartner; and (2) Abreu relied on Lona's representations in

23  entering into transactions with Time Zone.  <u>J&J Builders Supply</u>

24  <u>v. Caffin</u>, 248 Cal. App. 2d 292, 297 (Cal. Ct. App. 1967); <u>J.C.</u>

25  <u>Wattenbarger & Sons v. Sanders</u>, 216 Cal. App. 2d 495, 500-01

26  (Cal. Dist. Ct. App. 1963); <u>Hunter v. Croysdill</u>, 169 Cal. App. 2d

27  307, 315.

28

Memo. Decision After Trial.              31

1    As an initial matter, the evidence that supported the
2  Court's finding of an actual partnership satisfies Abreu's burden
3  of proof on the issue of whether Turi and Lona's conduct was
4  factually and legally sufficient to lead Abreu to reasonably
5  believe that Lona was a partner with Turi in Time Zone.  For
6  liability on a partnership by estoppel theory, Abreu must prove
7  the additional element of reliance.
8    Abreu testified that he agreed to continue doing business
9  with Time Zone and to accept Time Zone checks in reliance on: (i)
10  Lona and Turi's conduct, which made it appear that they were
11  partners; and (ii) Lona's statements that she would ensure
12  payment of Time Zone's debt.  Abreu also claimed that as a result
13  of this reliance, he is owed in excess of $439,000.  The Court is
14  not persuaded.
15    When Abreu began doing business with Time Zone in January
16  2001, he believed that Turi was Time Zone's owner.  Abreu did not
17  meet Lona until March or May 2001.  Thus, Abreu could not have
18  relied on Lona's status as a partner when he first began doing
19  business with Time Zone and extended it credit.
20    Abreu also testified that it was not until mid-year 2001
21  that he began to believe that Turi and Lona were partners and it
22  was not until late June or early July of 2001 that Lona first
23  told Abreu that she was going to help pay off the debt.  By this
24  point, Time Zone owed Abreu between $210,000 (as of June 29,
25  2001) and $303,000 (as of July 5, 2001).  Because this portion of
26  the debt was incurred prior to Lona making any representations
27  about helping to pay it off it could not have been incurred in
28

Memo. Decision After Trial.              32

1  reliance on those promises.

2      Further, the record does not support that the only, or even

3  the primary reason that Abreu continued to extend credit to Time

4  Zone was Lona's promises.  Review of the accounting provided by

5  Turi indicates that Time Zone consistently incurred debt and then

6  partially reduced it, despite the fact that Lona never apparently

7  fulfilled any of her specific promises.  The fact of the matter

8  is that Abreu was receiving payments and while he likely hoped

9  that Lona would follow through with her promises to reduce the

10  debt, he did not actually rely upon them and could not have

11  reasonably relied on them once Lona began to assert that she was

12  not a partner.  As a result, the Court cannot find that it is

13  more likely than not that Abreu continued to extend credit to

14  Time Zone because of those promises.

15      Finally, Abreu alleges that in reliance on Lona's promises

16  to pay Time Zone's debts, he resumed accepting checks in the

17  fourth week of October 2001.  To the contrary, Abreu testified

18  that he "had been telling them for a couple of months we should

19  go back to checks, but it was in October that they finally

20  started giving me checks."  Abreu testified that he started

21  accepting checks again because "I was having to go there every

22  day to pick up a payment.  It would just have been easier if they

23  would deposit into the account and we would just deposit the

24  check.  This was literally a three to four day a week thing to go

25  down there and have to collect this."  Thus, Abreu's own

26  testimony indicates that his decision to accept checks was more a

27  function of convenience than a function of Lona's promises.

28

Memo. Decision After Trial.            33

On this record, Abreu has not met his burden of proving that he relied on Lona's representations or her promises in deciding to continue doing business with Time Zone or in deciding to accept Time Zone checks in October 2001.  Accordingly, the Court does not find that an ostensible partnership or partnership by estoppel existed.

**IV.  <u>CONCLUSION</u>**

Based on the evidence and testimony at trial, Abreu has proved, by a preponderance of the evidence, that Turi and Lona conducted Time Zone as an actual partnership.  As a result, Lona is liable on Time Zone's debt to Abreu.  Lona's Objection to Abreu's Claim is overruled and Abreu's claim in the stipulated amount of $439,000 is allowed.  A separate Order will issue.

Memo. Decision After Trial.                  34

<u>Court service list</u>: [by mail and/or ecf]


David V. Duperrault  [ecf]
25 Metro Drive, Suite 600
San Jose, CA 95110
dvd@svlg.com

Stevan C. Adelman [mail]
25 Metro Drive, 7th Floor
San Jose, CA 95110

Kathryn Diemer [ecf]
75 E. Santa Clara St., Suite 290
San Jose, CA 95113
kdiemer@diemerwhitman.com

Charles Maher [ecf]
121 Spear St., Suite 200
San Francisco, CA 94105
cmaher@luce.com

Memo. Decision After Trial.            35

Salinas, 727OBJ, DSCDNY, PreAct, Exhibits, APPEAL

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
## Bankruptcy Petition #: 03-53915
### Internal Use Only

*Assigned to:* Judge Roger L. Efremsky
Chapter 7
Voluntary
Asset

*Date Filed:* 06/16/2003

*Debtor*
**Corrina Curiel Lona**
1143 Stony Brooks Dr.
Hollister, CA 95023
SSN: 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

represented by **David V. Duperrault**
Silicon Valley Law Group
25 Metro Dr. 6th Fl.
San Jose, CA 95110
(408) 573-5700
Email: dvd@svlg.com

**John A. Colistra**
Law Offices of John A. Colistra
1565 The Alameda #200
San Jose, CA 95126-2310
(408) 293-4747
Email:
Colistra-BK@sbcglobal.net
*TERMINATED: 11/03/2004*

**Judith Whitman**
Diemer, Whitman and Cardosi
75 E. Santa Clara St.
San Jose, CA 95113
(408) 971-6270
Email:
jwhitman@diemerwhitman.com



UNITED STATES BANKRUPTCY COURT
Northern District of California
I certify that this is a true, correct and full copy
of the original document on file in my custody.
Dated: 7/22/08
by *Bra Handler*
Deputy Clerk

*Trustee*
**John W. Richardson**
5161 Soquel Dr. #F
Soquel, CA 95073
(831) 475-2202

represented by **Luce Forward Hamilton and Scripps**

**Charles P. Maher**
Luce, Forward, Hamilton and
Scripps
121 Spear St. #200
San Francisco, CA 94105
(415) 356-4600
Email: cmaher@luce.com

*U.S. Trustee*
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

represented by **Nanette Dumas**
Office of the U.S. Trustee
280 S 1st St. #268
San Jose, CA 95113
(408) 535-5525
Email:
nanette.dumas@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 05/24/2006 | 158 | Certificate of Service (RE: related document(s)153 Order on Motion to Withdraw as Attorney). (Healy, William) (Entered: 05/24/2006) |
| 05/26/2006 | 159 | Order Granting Motion to Abstain and Remand (Related Doc # 116) (aw, ) (Entered: 05/26/2006) |
| 06/26/2006 | 160 | First Application for Compensation *and Expense Reimbursement* for Charles P. Maher, Trustee's Attorney, Fee: $66,729.75, Expenses: $2,766.60. Filed by Attorney Charles P. Maher (Attachments: # 1 Declaration of Charles P. Maher# 2 Exhibits A through C# 3 Certificate of Service) (Maher, Charles) (Entered: 06/26/2006) |
| 07/13/2006 | 161 | Certificate of Service *Scheduling Order* (RE: related document(s) Hearing Continued/Rescheduled (BK), Hearing Continued/Rescheduled (BK), Hearing Continued/Rescheduled (BK)). (Silver, Wayne) (Entered: 07/13/2006) |
| 07/27/2006 | | Hearing Set On (RE: related document(s)97 Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Hearing scheduled for 7/27/2006 at 02:30 PM at San Jose Courtroom 3099 - Efremsky. (cp, ) (Entered: 08/07/2006) |
| 07/27/2006 | | Hearing Set On (RE: related document(s)97 Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Hearing scheduled for 7/27/2006 at 02:30 PM at San Jose Courtroom 3099 - Efremsky. (cp, ) (Entered: 08/07/2006) |
| 07/27/2006 | | Hearing Continued (RE: related document(s)97 Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Hearing to be held on 9/28/2006 at 2:30 PM San Jose |

Courtroom 3099 - Efremsky (cp, ) (Entered: 08/07/2006)

| 07/30/2006 | ⊕162 | Order To Continue Hearing (RE: related document(s)97 Objection to Claim filed by Debtor Corrina Curiel Lona, Hearing Set, ). Hearing date set for 9/28/2006 at 2:30 AM San Jose Courtroom 3020 - Grube for [], (jd, ) (Entered: 07/31/2006) |
| --- | --- | --- |
| 07/31/2006 | ⊕163 | Judge Roger L. Efremsky added to case. Involvement of Judge James R. Grube Terminated. (Admin) (Entered: 07/31/2006) |
| 08/02/2006 | ⊕164 | BNC Certificate of Mailing (RE: related document(s)163 Case Reassignment). Service Date 08/02/2006. (Admin.) (Entered: 08/02/2006) |
| 08/02/2006 | ⊕165 | BNC Certificate of Mailing (RE: related document(s)162 Order to Continued Hearing). Service Date 08/02/2006. (Admin.) (Entered: 08/02/2006) |
| 08/08/2006 | ⊕166 | Amended Notice of Reassignment of Case. All pending cases previously assigned to Judge James R. Grube have been reassigned to Judge Roger L. Efremsky. Please disregard the Notice of Reassignment of Case sent by the court on July 31, 2006 which did not contain the Debtor(s) name or case number on the notice . (jc, ) (Entered: 08/08/2006) |
| 08/10/2006 | ⊕167 | BNC Certificate of Mailing (RE: related document(s)166 Amended Notice of Reassignment (Transfer of Cases from Judge Grube to Efremsky), Amended Notice of Reassignment (Transfer of Cases from Judge Grube to Efremsky)). Service Date 08/10/2006. (Admin.) (Entered: 08/10/2006) |
| 08/18/2006 | ⊕168 | First Trustee's Interim Report The UST has reviewed the Trustee's Interim Report and submitted to the U.S. Bankruptcy Court for filing. Filed by Trustee John W. Richardson. (U.S. Trustee (bm), ) (Entered: 08/18/2006) |
| 08/18/2006 | ⊕169 | First Application for Compensation for John W. Richardson, Trustee Chapter 7, Fee: $49353.22, Expenses: $43.68. The UST has reviewed the Application for Compensation of the trustee and submitted to the U.S. Bankruptcy Court for filing. Filed by Trustee John W. Richardson. (U.S. Trustee (bm), ) (Entered: 08/18/2006) |
| 08/21/2006 | ⊕170 | Notice of Hearing *on Trustee's Interim Report, Interim Applications for Compensation and Expense Reimbursement of Trustee and his Counsel, and Notice of Intent to Pay Undisputed Priority Claim* (RE: related document(s)160 First Application for Compensation *and Expense Reimbursement* for Charles P. Maher, Trustee's Attorney, Fee: |

$66,729.75, Expenses: $2,766.60. Filed by Attorney Charles P. Maher (Attachments: # 1 Declaration of Charles P. Maher# (2) Certificate of Service) (Maher, Charles), 169 First Application for Compensation for John W. Richardson, Trustee Chapter 7, Fee: $49353.22, Expenses: $43.68. The UST has reviewed the Application for Compensation of the trustee and submitted to the U.S. Bankruptcy Court for filing. Filed by Trustee John W. Richardson. (U.S. Trustee (bm), )). Hearing scheduled for 9/13/2006 at 10:30 AM at San Jose Courtroom 3099 - Efremsky. Filed by Trustee John W. Richardson (Attachments: # 1 Certificate of Service) (Maher, Charles) (Entered: 08/21/2006)

| | | |
|---|---|---|
| 08/30/2006 | 171 | Substitution of Attorney . Stevan C. Adelman added to the case. Filed by Creditor Jose Abreu (Kornbluh, David) (Entered: 08/30/2006) |
| 08/30/2006 | 172 | Notice of Appearance and Request for Notice *filed by Stevan C. Adelman* by David I. Kornbluh Filed by Creditor Jose Abreu (Kornbluh, David) **ERROR: INCORRECT ATTORNEY ADDED.** Modified on 8/31/2006 (cvc, ). (Entered: 08/30/2006) |
| 08/31/2006 | | **\*\*CORRECTIVE ENTRY\*\*** (RE: related document(s)172 Notice of Appearance and Request for Notice).ERROR: INCORRECT ATTORNEY ADDED. **COURT CORRECTED AND ADDED ATTORNEY REPRESENTING THE CREDITOR.** (cvc, ) (Entered: 08/31/2006) |
| 09/13/2006 | | Hearing Held (RE: related document(s)160 First Application for *Compensation and Expense Reimbursement* for Charles P. Maher, Trustee's Attorney, Fee: $66,729.75, Expenses: $2,766.60. Filed by Attorney Charles P. Maher (Attachments: # (1) Declaration of Charles P. Maher# (2) Exhibits A through C# (3) Certificate of Service) (Maher, Charles), 169 First Application for Compensation for John W. Richardson, Trustee Chapter 7, Fee: $49353.22, Expenses: $43.68. The UST has reviewed the Application for Compensation of the trustee and submitted to the U.S. Bankruptcy Court for filing. Filed by Trustee John W. Richardson. (U.S. Trustee (bm), )). Both applications approved as submitted, no objections. (cp, ) (Entered: 09/13/2006) |
| 09/14/2006 | 173 | Order Granting Application For Compensation (Related Doc # 160). fees awarded: $66729.75, expenses awarded: $2766.60 for Charles P. Maher (jc, ) (Entered: 09/14/2006) |
| 09/14/2006 | 174 | Order Granting Application For Compensation (Related Doc # 169). fees awarded: $49353.22, expenses awarded: $43.68 for John W. Richardson (jc, ) (Entered: 09/14/2006) |

| 09/14/2006 | ◉174 | Order Approving Interim Report and Account . (jc, ) (Entered: 09/14/2006) |
| 09/25/2006 | ◉175 | Joint Status Conference Statement *of Timothy J. Turi, Corrina C. Lona and Jonas Lona* (RE: related document(s)162 Order to Continued Hearing). Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Exhibit Attachment 1 and 2) (Duperrault, David) Modified on 9/27/2006 ERROR: DOCUMENT FILED IN THE INCORRECT CASE - SHOULD BE DOCKETED IN ADVERSARY PROCEEDING #03-5552. (be, ). (Entered: 09/25/2006) |
| 09/26/2006 | ◉176 | Certificate of Service *Via Facsimile* (RE: related document(s)175 Status Conference Statement, ). (Duperrault, David) **ERROR: DOCKETED ON WRONG CASE.** Modified on 9/27/2006 (cvc, ). (Entered: 09/26/2006) |
| 09/26/2006 | ◉177 | Certificate of Service *by E-Mail* (RE: related document(s)175 Status Conference Statement, ). (Duperrault, David) **ERROR: DOCKETED ON WRONG CASE.**Modified on 9/27/2006 (cvc, ). (Entered: 09/26/2006) |
| 09/26/2006 | | Deadlines terminated. Hearings- Held. (jc, ) (Entered: 09/26/2006) |
| 09/27/2006 | ◉178 | Case Management Conference Statement . (RE: related document(s)162 Order to Continued Hearing). Filed by Creditor Jose Abreu (Kornbluh, David)ERROR: DOCKETED ON INCORRECT CASE NUMBER. Modified on 9/28/2006 (jd, ). (Entered: 09/27/2006) |
| 09/27/2006 | ◉179 | Certificate of Service (RE: related document(s)178 Case Management Conference Statement). Filed by Creditor Jose Abreu (Kornbluh, David)ERROR: DOCKETED ON INCORRECT CASE NUMBER. Modified on 9/28/2006 (jd, ). (Entered: 09/27/2006) |
| 09/28/2006 | ◉ | Hearing Continued (RE: related document(s)116 Motion to Abstain and Remand *and*, Motion to Stay *Matter* Filed by Creditors Jose Abreu, Elias Quarmont NTI Communications Corp. Hearing to be held on 10/26/2006 at 2:30 PM San Jose Courtroom 3099 - Efremsky for 116, (tb, ) (Entered: 09/28/2006) |
| 09/28/2006 | ◉ | Hearing Continued (RE: related document(s)121 Motion to Consolidate Cases Filed by Debtor Corrina Curiel Lona . Hearing to be held on 10/26/2006 at 2:30 PM San Jose Courtroom 3099 - Efremsky for 121, (tb, ) (Entered: 09/28/2006) |
| 09/28/2006 | ◉ | Hearing Continued (RE: related document(s)81 Objection to Claim *of* |

| | | |
|---|---|---|
| | | *Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona. Hearing to be held on 10/26/2006 at 2:30 PM San Jose Courtroom 3099 - Efremsky for <u>81</u>, (tb, ) (Entered: 09/28/2006) |
| 09/28/2006 | | Hearing Continued (RE: related document(s)<u>93</u> Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. Hearing to be held on 10/26/2006 at 2:30 PM San Jose Courtroom 3099 - Efremsky for <u>93</u>, (tb, ) (Entered: 09/28/2006) |
| 09/28/2006 | | Hearing Continued (RE: related document(s)<u>95</u> Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. Hearing to be held on 10/26/2006 at 2:30 PM San Jose Courtroom 3099 - Efremsky for <u>95</u>, (tb, ) (Entered: 09/28/2006) |
| 09/28/2006 | | Hearing Continued (RE: related document(s)<u>97</u> Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. Hearing to be held on 10/26/2006 at 2:30 PM San Jose Courtroom 3099 - Efremsky for <u>97</u>, (tb, ) (Entered: 09/28/2006) |
| 10/05/2006 | <u>180</u> | Certificate of Service *of [Proposed] Order Re Discovery and Continued Case Management Conference* (Duperrault, David) Modified on 10/6/2006 ERROR: PAGE ONE OF CERTIFICATE OF SERVICE IS NOT INCLUDED IN PDF OF DOCUMENT. (be, ). (Entered: 10/05/2006) |
| 10/09/2006 | <u>181</u> | Amended Certificate of Service *[Proposed} Order Re Discovery and Continued Case Management Conference* (Duperrault, David)ERROR: DOCKETED ON INCORRECT CASE NUMBER, SHOULD BE ON THE ADVERSARY. 2nd ERROR: NOT LINKED TO ORDER. Modified on 10/11/2006 (jd, ). (Entered: 10/09/2006) |
| 10/10/2006 | <u>182</u> | Order Re: Discovery and Continued Case Management Conference (RE: related document(s)<u>97</u> Objection to Claim filed by Debtor Corrina Curiel Lona). (jc, ) (Entered: 10/12/2006) |
| 10/14/2006 | <u>183</u> | BNC Certificate of Mailing (RE: related document(s)<u>182</u> Order). Service Date 10/14/2006. (Admin.) (Entered: 10/14/2006) |
| 10/19/2006 | <u>184</u> | Pre-Hearing Statement Filed by Creditor United States IRS (Attachments: # <u>1</u> Certificate of Service) (Strate, John) (Entered: 10/19/2006) |
| 10/20/2006 | <u>185</u> | Status Conference Statement (RE: related document(s)<u>182</u> Order). Filed by Creditors Jose Abreu, Jonas Z. Lona, Debtor Corrina Curiel Lona, |

| | | |
|---|---|---|
| | | Interested Party Timothy Joseph Turi (Attachments: # 1 Certificate of Service) (Silver, Wayne) ERROR: WRONG EVENT SELECTED. Modified on 10/23/2006 (jc, ). (Entered: 10/20/2006) |
| 10/24/2006 | ◐186 | Notice Regarding *Withrawal of Objection by Debtor to Amended Claim of Internal Revenue Service* (RE: related document(s)97 Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. (Attachments: # 1 Certificate of Service)(Duperrault, David)). Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Proof of Claim # 2 Certificate of Service) (Duperrault, David)ERROR: WRONG EVENT CODE SELECTED. Modified on 10/25/2006 (aw, ). (Entered: 10/24/2006) |
| 10/26/2006 | ◐ | Hearing Held (RE: related document(s)116 Motion to Abstain and Remand *and*, Motion to Stay *Matter* Filed by Creditors Jose Abreu, Elias Quarmont NTI Communications Corp. (Attachments: # (1) Declaration of William J. Healy# (2) Exhibit A to Healy Dec# (3) Exhibit B to Healy Dec# (4) Exhibit C to Healy Dec# (5) Exhibit D to Healy Dec) (Healy, William)). Pre-trial set for 12/21 at 2:30. (cp, ) (Entered: 11/01/2006) |
| 10/26/2006 | ◐ | Hearing Held (RE: related document(s)121 Motion to Consolidate Cases Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Certificate of Service) (Duperrault, David)). Pre-trial set for 12/21 at 2:30. (cp, ) (Entered: 11/01/2006) |
| 10/26/2006 | ◐ | Hearing Held (RE: related document(s)93 Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David), 81 Objection to Claim *of Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David). ERROR: DOCKETED AFTER NOTICE OF HEARING, . Modified on 7/28/2005 (se, )., 95 Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Pre-trial set for 12/21 at 2:30. (cp, ) (Entered: 11/01/2006) |
| 10/26/2006 | ◐ | Hearing Held (RE: related document(s)97 Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David), Hearing Set On (RE: related document(s)97 Objection to Claim *By Debtor to Claims of Internal Revenue Service* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Off cal, objection withdrawn. (cp, ) (Entered: 11/01/2006) |

| 10/26/2006 | ⬤ | Hearing Set On (RE: related document(s)121 Motion to Consolidate Cases Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Certificate of Service) (Duperrault, David), 116 Motion to Abstain and Remand *and*, Motion to Stay *Matter* Filed by Creditors Jose Abreu, Elias Quarmont NTI Communications Corp. (Attachments: # (1) Declaration of William J. Healy# (2) Exhibit A to Healy Dec# (3) Exhibit B to Healy Dec# (4) Exhibit C to Healy Dec# (5) Exhibit D to Healy Dec) (Healy, William)). Pre-Trial Hearing scheduled for 12/21/2006 at 02:30 PM at San Jose Courtroom 3099 - Efremsky. (cp, ) (Entered: 11/01/2006) |
|---|---|---|
| 10/26/2006 | ⬤ | Hearing Set On (RE: related document(s)93 Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David), 81 Objection to Claim *of Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David). ERROR: DOCKETED AFTER NOTICE OF HEARING, . Modified on 7/28/2005 (se, )., 95 Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Pre-Trial Hearing scheduled for 12/21/2006 at 02:30 PM at San Jose Courtroom 3099 - Efremsky. (cp, ) (Entered: 11/01/2006) |
| 10/27/2006 | ⬤187 | Order RE CLAIMS OF INTERNAL REVENUE SERVICE (RE: related document(s)186 Notice, filed by Debtor Corrina Curiel Lona, 97 Objection to Claim filed by Debtor Corrina Curiel Lona). (aw, ) (Entered: 10/27/2006) |
| 10/29/2006 | ⬤188 | BNC Certificate of Mailing (RE: related document(s)187 Order). Service Date 10/29/2006. (Admin.) (Entered: 10/29/2006) |
| 12/19/2006 | ⬤189 | Joinder *By Debtor Corrina C. Lona In Joint Trial Setting Conference Statement of Timothy J. Turi and Jonas Lona* Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David)ERROR: DOCKETED IN ERROR ON THE MAIN CASES INSTEAD OF THE ADVERSARY PROCEEDING. ATTORNEY TO CORRECT ERROR. Modified on 12/20/2006 (aw, ). (Entered: 12/19/2006) |
| 12/21/2006 | ⬤ | Hearing Continued (RE: related document(s)121 Motion to Consolidate Cases Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Certificate of Service) (Duperrault, David), 116 Motion to Abstain and Remand *and*, Motion to Stay *Matter* Filed by Creditors Jose Abreu, Elias Quarmont NTI Communications Corp. (Attachments: # (1) Declaration of William J. Healy# (2) Exhibit A to Healy Dec# (3) |

Exhibit B to Healy Dec# (4) Exhibit C to Healy Dec# (5) Exhibit D to Healy Dec) (Healy, William)). Pre-trial to be held on 1/4/2007 at 2:30 PM San Jose Courtroom 3099 - Efremsky. Status stmt due 2 days prior. (cp, ) (Entered: 12/22/2006)

| | | |
|---|---|---|
| 12/21/2006 | 🔵 | Hearing Continued (RE: related document(s)93 Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David), 81 Objection to Claim *of Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David). ERROR: DOCKETED AFTER NOTICE OF HEARING, . Modified on 7/28/2005 (se, )., 95 Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Hearing to be held on 1/4/2007 at 2:30 PM San Jose Courtroom 3099 - Efremsky for 81, 93, 95. Status stmts due 2 days prior. (cp, ) (Entered: 12/22/2006) |
| 12/22/2006 | 🔵190 | Notice of Continued Hearing *Trial Setting Conference* (RE: related document(s) Hearing Continued (RE: related document(s)93 Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. (Attachments: # 1 Certificate of Service)(Duperrault, David), 81 Objection to Claim *of Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona. (Attachments: # 1 Certificate of Service)(Duperrault, David). ERROR: DOCKETED AFTER NOTICE OF HEARING,. Modified on 7/28/2005 (se, )., 95 Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. (Attachments: # 1 Certificate of Service)(Duperrault, David)). Hearing to be held on 1/4/2007 at 2:30 PM San Jose Courtroom 3099 - Efremsky for 81, 93, 95. Status stmts due 2 days prior. (cp, )). Filed by Interested Party Timothy Joseph Turi (Attachments: # 1 Certificate of Service) (Silver, Wayne)ERROR: ATTACHMENT #1 THE CERTIFICATE OF SERVICE PDF DOCUMENT DOCKETED IN WRONG CASE. DEBTOR'S NAME AND CASE NUMBER MISSING FROM PDF. Modified on 12/26/2006 (jd, ). (Entered: 12/22/2006) |
| 01/03/2007 | 🔵191 | Status Conference Statement *Joint Trial Setting Conference Statement* (RE: related document(s)182 Order). Filed by Debtor Corrina Curiel Lona, Creditor Jonas Z. Lona, Interested Party Timothy Joseph Turi (Attachments: # 1 Certificate of Service By Facsimile) (Silver, Wayne) (Entered: 01/03/2007) |
| 01/04/2007 | 🔵 | Hearing Held (RE: related document(s)81 Objection to Claim *of Jose* |

| | | |
|---|---|---|
| | | *Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David). ERROR: DOCKETED AFTER NOTICE OF HEARING, . Modified on 7/28/2005 (se, ).). Trial set for 5/14 at 9:30, 3 days, 7-1/2 hrs each side. Any motions in limine to be filed by 3/16 & heard by 4/18. Trial briefs due by 4/25. Court to do order. (cp, ) (Entered: 01/05/2007) |
| 01/04/2007 | 🌐 | Hearing Held (RE: related document(s)93 Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Trial set for 4/30 at 9:30. Motions in limine to be filed by 3/16 & heard by 4/18. Trial briefs due 4/25. NTI must be represented by counsel. Court to issue an order. (cp, ) (Entered: 01/05/2007) |
| 01/04/2007 | 🌐 | Hearing Held (RE: related document(s)95 Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David)). Trial set for 4/30 at 1:30. Motions in limine to be filed by 3/16 & heard by 4/18. Trial briefs due 4/25. Court to issue an order. (cp, ) (Entered: 01/05/2007) |
| 01/09/2007 | 🌐192 | Order for Pre-Trial Preparation and Trial (RE: related document(s)95 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 4/30/2007 at 01:30 PM at San Jose Courtroom 3099 - Efremsky. (jd, ) (Entered: 01/09/2007) |
| 01/09/2007 | 🌐193 | Order for Pre-Trial Preparation and Trial (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 5/14/2007 at 09:30 AM at San Jose Courtroom 3099 - Efremsky. (jd, ) (Entered: 01/09/2007) |
| 01/09/2007 | | Documents terminated. Objection to Claim - Orders docketed. (jd, ) ERROR: COURT ERROR DISREGARD ENTRY- DOCUMENTS UNTERMINATED. Modified on 1/9/2007 (jd, ). (Entered: 01/09/2007) |
| 01/09/2007 | 🌐194 | Order To Set Hearing (RE: related document(s)93 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 4/30/2007 at 09:30 AM at San Jose Courtroom 3099 - Efremsky. (jd, ) (Entered: 01/09/2007) |
| 01/11/2007 | 🌐195 | BNC Certificate of Mailing (RE: related document(s)192 Order, Order To Set Hearing). Service Date 01/11/2007. (Admin.) (Entered: 01/11/2007) |

| 01/11/2007 | ●196 | BNC Certificate of Mailing (RE: related document(s)193 Order To Set Hearing). Service Date 01/11/2007. (Admin.) (Entered: 01/11/2007) |
| 01/11/2007 | ●197 | BNC Certificate of Mailing (RE: related document(s)194 Order To Set Hearing). Service Date 01/11/2007. (Admin.) (Entered: 01/11/2007) |
| 01/17/2007 | | Deadlines terminated. Hearings - deadline past. (jd, ) (Entered: 01/17/2007) |
| 02/20/2007 | ●198 | Subpoena *re document production to Custodian of Records for State of California Franchise Tax Board* Filed by Creditor Jose Abreu (Kornbluh, David) (Entered: 02/20/2007) |
| 02/20/2007 | ●199 | Declaration of Stevan C. Adelman in support of *Subpoena re document production to Custodian of Records For State of California Franchise Tax Board* (RE: related document(s)198 Subpoena). Filed by Creditor Jose Abreu (Kornbluh, David) (Entered: 02/20/2007) |
| 03/06/2007 | ●200 | Notice of Amendement to Proof of Claim: Jose Abreu amends his amended Proof of Claim #4 filed on 8/28/03, to reflect the unsecured amount of $439,000.00 Filed by Creditor Jose Abreu (tp, ) (Entered: 03/06/2007) |
| 03/06/2007 | ●201 | Certificate of Service (RE: related document(s)200 Notice). Filed by Creditor Jose Abreu (jd, ) (Entered: 03/07/2007) |
| 03/16/2007 | ●202 | Motion *In Limine by Debtor to Limit Documentary Evidence* Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# 2 Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David) (Entered: 03/16/2007) |
| 03/16/2007 | ●203 | Notice of Hearing *On Motion In Limine by Debtor to Limit Documentary Evidence* (RE: related document(s)202 Motion *In Limine by Debtor to Limit Documentary Evidence* Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Hearing scheduled for 4/18/2007 at 10:30 AM at San Jose Courtroom 3099 - Efremsky. Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) (Entered: 03/16/2007) |

| 03/28/2007 | 204 | Joint Motion to Continue Hearing On *Stipulation to Continue Trial Date on Debtor's Objection to the Claims of Creditor, Jose Abreu (Claim Nos. 1 and 4)* (RE: related document(s)193 Order To Set Hearing). Filed by Creditor Jose Abreu (Kornbluh, David) (Entered: 03/28/2007) |
|---|---|---|
| 04/04/2007 | 205 | Order To Continue Hearing (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona,204 Motion to Continue Hearing, 193 Order To Set Hearing). Trial date set for 6/4/2007 at 9:30 AM San Jose Courtroom 3099 - Efremsky for 193, (jd, ) (Entered: 04/04/2007) |
| 04/06/2007 | 206 | BNC Certificate of Mailing (RE: related document(s)205 Order to Continued Hearing, ). Service Date 04/06/2007. (Admin.) (Entered: 04/06/2007) |
| 04/18/2007 |  | Hearing Continued (RE: related document(s)202 Motion *In Limine by Debtor to Limit Documentary Evidence* Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Hearing to be held on 4/30/2007 at 9:00 AM - re NTI only, San Jose Courtroom 3099 - Efremsky for 202. Motion, re Choi, cont to 4/30 at 1:00 p.m. and the motion re Abreu is continued to 5/9 at 10:30 a.m. Movant to file & serve a notice of continuance & lists of docs by 4/25/07. (cp, ) (Entered: 04/18/2007) |
| 04/23/2007 | 207 | Witness List *of Debtor and Objecting Party, Corrina C. Lona, Objection to Claim of NTI* Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) (Entered: 04/23/2007) |
| 04/23/2007 | 208 | Witness List *of Debtor and Objecting Party, Corrina C. Lona, Objection to Claim of Choi* Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) (Entered: 04/23/2007) |
| 04/25/2007 | 209 | Stipulation, for Order Regarding Pretrial Dates (*Objection by Debtor to Claim of Jose Abreu*) Filed by Debtor Corrina Curiel Lona (RE: related document(s)193 Order To Set Hearing). (Duperrault, David) (Entered: 04/25/2007) |
| 04/25/2007 | 210 | Notice of Continued Hearing *on Debtor's Motion In Limine to Limit Documentary Evidence By Sangshup "Charlie" Choi, dba C&M Company* (RE: related document(s)202 Motion *In Limine by Debtor to* |

| | | Limit Documentary Evidence Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Hearing to be held on 4/30/2007 at 1:00 PM San Jose Courtroom 3099 - Efremsky for 202, Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) (Entered: 04/25/2007) |
|---|---|---|
| 04/25/2007 | 211 | Notice of Continued Hearing On Debtor's Motion In Limine to Limit Documentary Evidence By NTI Communications Corporation dba National Telecard Alliance (RE: related document(s)202 Motion In Limine by Debtor to Limit Documentary Evidence Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Hearing to be held on 4/30/2007 at 9:00 AM San Jose Courtroom 3099 - Efremsky for 202, Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) (Entered: 04/25/2007) |
| 04/25/2007 | 212 | Notice of Continued Hearing On Debtor's Motion In Limine to Limit Documentary Evidence by Jose Abreu (RE: related document(s)202 Motion In Limine by Debtor to Limit Documentary Evidence Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Hearing to be held on 5/9/2007 at 10:30 AM San Jose Courtroom 3099 - Efremsky for 202, Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) (Entered: 04/25/2007) |
| 04/25/2007 | 213 | Motion for Entry of Default (RELATED DOCUMENT: 93 Objection to Claim )Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David)ERROR: INCORRECT LINKAGE - COURT CORRECTED Modified on 4/26/2007 (jd, ). (Entered: 04/25/2007) |
| 04/25/2007 | 214 | Motion for Entry of Default (RELATED DOCUMENT: 95 Objection to Claim ) Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Certificate of Service) (Duperrault, David) ERROR: NOT LINKED COURT ADDED LINKAGE. Modified on 4/26/2007 (jd, ). (Entered: 04/25/2007) |

| 04/26/2007 | ◕215 | Order (RE: related document(s)209 Stipulation for Miscellaneous Relief filed by Debtor Corrina Curiel Lona). (jd, ) (Entered: 04/26/2007) |
|---|---|---|
| 04/28/2007 | ◕216 | BNC Certificate of Mailing (RE: related document(s)215 Order). Service Date 04/28/2007. (Admin.) (Entered: 04/28/2007) |
| 04/30/2007 | ◕217 | Trial Brief Filed by Debtor Corrina Curiel Lona (Duperrault, David) (Entered: 04/30/2007) |
| 04/30/2007 | ◕218 | Trial Brief *Objection to Claim of Choi* Filed by Debtor Corrina Curiel Lona (Duperrault, David) (Entered: 04/30/2007) |
| 04/30/2007 | ◕ | Hearing Held (RE: related document(s)202 Motion *In Limine by Debtor to Limit Documentary Evidence* Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Motion re NTI, off cal. Motion re Choi, denied. (cp, ) (Entered: 05/01/2007) |
| 04/30/2007 | ◕219 | Hearing Held (RE: related document(s)93 Objection to Claim *of NTI Communication Corporation dba National Telecard Alliance* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David), 194 Order To Set Hearing (RE: related document(s)93 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 4/30/2007 at 09:30 AM at San Jose Courtroom 3099 - Efremsky. (jd, )). No appearance by Creditor. Debtor presented evidence. Exhibits by debtor A-K admitted into evidence. Witnesses testified 1) Timothy Turi, 2) Alvaro Amador, 3) Corrina Lona. Ruling-Claim overruled and disallowed in it's entirety with prejudice. (cvt, ) Modified on 5/4/2007 (cp, ). (Entered: 05/03/2007) |
| 04/30/2007 | ◕220 | Hearing Held (RE: related document(s)95 Objection to Claim *by Debtor to Claim of Sangshup Choi dba C&M Co./Charlie Choi* Filed by Debtor Corrina Curiel Lona. (Attachments: # (1) Certificate of Service)(Duperrault, David), 192 Order for Pre-Trial Preparation and Trial (RE: related document(s)95 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 4/30/2007 at 01:30 PM at San Jose Courtroom 3099 - Efremsky. (jd, )). Creditor present; did not comply with Pre-Trial Order. Did not file trial brief or exhibit list or witness list. Debtor submitted Exhibits A-K, marked for identification. No other evidence presented; No witnesses testified. Mr.Duperrault moved for a direct verdict.Ruling-Claim overruled and denied in it's entirety with prejudice. (cvt, ) Modified on 5/4/2007 (cp, ). (Entered: 05/03/2007) |

| | | |
|---|---|---|
| 05/03/2007 | | Flags Set-Exhibits . (cvt, ) (Entered: 05/03/2007) |
| 05/07/2007 | ●221 | Order (RE: related document(s)93 Objection to Claim filed by Debtor Corrina Curiel Lona). (jd, ) (Entered: 05/07/2007) |
| 05/07/2007 | ●222 | Order (RE: related document(s)95 Objection to Claim filed by Debtor Corrina Curiel Lona). (jd, ) (Entered: 05/07/2007) |
| 05/08/2007 | ●223 | Supplemental Declaration of of David Duperrault in Motion in Limine by Debtor To Limit Documentary Evidence of *Jose Abreu dba Intertel Communications* (RE: related document(s)202 Motion Miscellaneous Relief, ). Filed by Debtor Corrina Curiel Lona (Attachments: # 1 Exhibit Documents Produced or Filed by Abreu# 2 Certificate of Service) (Duperrault, David) (Entered: 05/08/2007) |
| 05/08/2007 | ●224 | Certificate of Service *of Compact Disc of Documents Produced by Jose Abreu* (RE: related document(s)223 Declaration, ). (Duperrault, David) (Entered: 05/08/2007) |
| 05/09/2007 | ●225 | Order NOT SIGNED (RE: related document(s)93 Objection to Claim filed by Debtor Corrina Curiel Lona). (jd, ) (Entered: 05/09/2007) |
| 05/09/2007 | ●226 | BNC Certificate of Mailing (RE: related document(s)221 Order). Service Date 05/09/2007. (Admin.) (Entered: 05/09/2007) |
| 05/09/2007 | ●227 | BNC Certificate of Mailing (RE: related document(s)222 Order). Service Date 05/09/2007. (Admin.) (Entered: 05/09/2007) |
| 05/09/2007 | ● | Hearing Continued (RE: related document(s)202 Motion *In Limine by Debtor to Limit Documentary Evidence* Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). Hearing to be held on 5/16/2007 at 10:30 AM San Jose Courtroom 3099 - Efremsky for 202,Adelman to deliver copies of 3 letters to Mr. Duperrault by C.O.B today.Ct to reserve ruling as to the use of the letters at trial. Ct. to limit use of docs by Abreu to those already recv'd & listed on cd-rom. (cvt, ) (Entered: 05/11/2007) |
| 05/10/2007 | ●228 | Order (RE: related document(s)93 Objection to Claim filed by Debtor Corrina Curiel Lona). (jd, ) (Entered: 05/10/2007) |
| 05/10/2007 | ●229 | Order (RE: related document(s)95 Objection to Claim filed by Debtor Corrina Curiel Lona). (jd, ) (Entered: 05/10/2007) |

| 05/11/2007 | 230 | BNC Certificate of Mailing (RE: related document(s)225 Order). Service Date 05/11/2007. (Admin.) (Entered: 05/11/2007) |
|---|---|---|
| 05/12/2007 | 231 | BNC Certificate of Mailing (RE: related document(s)228 Order). Service Date 05/12/2007. (Admin.) (Entered: 05/12/2007) |
| 05/12/2007 | 232 | BNC Certificate of Mailing (RE: related document(s)229 Order). Service Date 05/12/2007. (Admin.) (Entered: 05/12/2007) |
| 05/16/2007 | 233 | Hearing Held (RE: related document(s)202 Motion *In Limine by Debtor to Limit Documentary Evidence* Filed by Debtor Corrina Curiel Lona (Attachments: # (1) Memorandum of Points and Authorities In Support of Motion In Limine by Debtor to Limit Documentary Evidence# (2) Declaration of David Duperrault in Support of Motion In Limine by Debtor to Limit Documentary Evidence) (Duperrault, David)). GRANTED.Exhibits, witness list & trial briefs due by 9am on 5/29/07. (cvt, ) (Entered: 05/16/2007) |
| 05/22/2007 | 234 | Order Granting Motion for Miscellaneous Relief(Related Doc # 202) (jd, ) (Entered: 05/22/2007) |
| 05/24/2007 | 235 | BNC Certificate of Mailing (RE: related document(s)234 Order on Motion for Miscellaneous Relief). Service Date 05/24/2007. (Admin.) (Entered: 05/24/2007) |
| 05/29/2007 | 236 | Trial Brief *Of Debtor and Objecting Party, Corrina Curiel Lona Re Objection to Claim of Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona (Duperrault, David) (Entered: 05/29/2007) |
| 05/29/2007 | 237 | Witness List *of Debtor and Objecting Party, Corrina C. Lona re Objection to Claim of Jose Abreu dba Intertel Communications* Filed by Debtor Corrina Curiel Lona (Duperrault, David) (Entered: 05/29/2007) |
| 05/29/2007 | 238 | Certificate of Service *by Personal Delivery* (RE: related document(s)236 Trial Brief, AND 237 Witness List of Debtor and Objecting Party, Corrina C. Lona re Objection to Claim of Jose Abreu). (Duperrault, David) ERROR: NOT LINKED TO ALL DOCUMENTS SERVED - COURT ADDED LINKAGE. Modified on 5/30/2007 (jd, ). (Entered: 05/29/2007) |
| 05/29/2007 | 239 | Trial Brief (RE: related document(s)81 Objection to Claim). Filed by Creditor Jose Abreu (Attachments: # 1 Certificate of Service) (jd, ) (Entered: 05/29/2007) |
| 05/29/2007 | 243 | Witness List . Filed by Creditor Jose Abreu (jd, ) (Entered: 06/04/2007) |

| 05/31/2007 | ●244 | Supplemental Witness List . Filed by Creditor Jose Abreu (jd, ) (Entered: 06/04/2007) |
|---|---|---|
| 06/01/2007 | ●240 | Motion for Ex Parte order permitting use of audio equipment in court by creditor with declaration of Stevan Adelman in support Filed by Creditor Jose Abreu (jd, ) (Entered: 06/01/2007) |
| 06/01/2007 | ●241 | Order Granting Motion for Ex Parte order permitting use of audio equipment in court (Related Doc # 240) (jd, ) (Entered: 06/01/2007) |
| 06/04/2007 | ●242 | Objection to Claim *Joinder in Objection filed by Debtor, Corrina Lona, on June 15, 2005* (RELATED DOCUMENT: 81 Objection to Claim of Jose Abreu dba Intertel Communications )Filed by Creditor Jonas Z. Lona. (Whitman, Judith) 1st ERROR: WRONG EVENT SELECTED THE CORRECT EVENT IS JOINDER. 2nd ERROR: MUST BE LINKED TO THE OBJECTION TO CLAIM OF JOSE ABREU - COURT ADDED LINKAGE. Modified on 6/6/2007 (jd, ). (Entered: 06/04/2007) |
| 06/04/2007 | ● | Hearing Continued (RE: related document(s)193 Order for Pre-Trial Preparation and Trial (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 6/5/2007 at 9:30 AM San Jose Courtroom 3099 - Efremsky for 193. Witnesses who testified: 1)Jose Abreu, 2)John Richardson, 3)Eugene Katz. Plaintiff's exh #1-8 marked for identification, #1,2,3,4 & 7 admitted into evidence. Debtor's exh #A-X, S-2 marked for identification, #A,B,W admitted into evidence. (cp, ) (Entered: 06/06/2007) |
| 06/05/2007 | ● | Hearing Continued (RE: related document(s)193 Order for Pre-Trial Preparation and Trial (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 6/8/2007 at 9:30 AM San Jose Courtroom 3099 - Efremsky for 193. Witnesses who testified: 1)Jose Abreu, 2)Swan Nguyen, 3)Romulus Bobesku, 4)Mauricio Diaz, 5)Marysol Solorio, 6)Alvaro Amador. Plaintiff's exh #9-14 market for identification. Court reserves rule as to the admission of Pl exh. $5,9,10,11,12.Plaintiff rests. Debtor's exh. #Y,Z,AA,BB marked for identification. Court reserves ruling as to the admission of def. exh. V. Debtor's motion under 52(c) for judgment on partial findings is denied. (cp, ) (Entered: 06/06/2007) |
| 06/08/2007 | ● | Hearing Continued (RE: related document(s)193 Order for Pre-Trial Preparation and Trial (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona). Trial date set for 6/11/2007 at 9:30 AM San Jose Courtroom 3099 - Efremsky for 193. Timothy Turi testified. Court will reserve ruling re admission of def's exh. #S-1 & S-2. (cp, ) (Entered: 06/08/2007) |

| 06/11/2007 | ○ | Hearing Held (RE: related document(s)193 Order for Pre-Trial Preparation and Trial (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona). Witnesses: 1)Timothy Turi, 2) Corrina Lona. Plaintiff's exh. #15,16 marked for identification, #5,9,10,11,12,13,14 admitted into evidence. Defendant's (debtor) exh. #S-1, W-1, W-2, X, Z, AA, BB, CC, DD admitted into evidence. (W-1 replaces W) Both sides presented closing arguments & trial concluded. Matter is under submission. (cp, ) (Entered: 06/12/2007) |
|---|---|---|
| 06/11/2007 | | Flags Set-Reset . EXHIBITS (cp, ) (Entered: 06/12/2007) |
| 07/04/2007 | ○ 245 | Transcript, Date of Hearing: 6-4-07 *Trial Proceedings: Hearing re: Debtor's Objection to Claim of Jose Abreu (#1, #4) Volume I.* (McCall, Jo) (Entered: 07/04/2007) |
| 07/04/2007 | ○ 246 | Transcript, Date of Hearing: 6-5-07 *Trial Proceedings: Hearing re: Debtor's Objection to Claim of Jose Abreu (#1, #4) Volume II.* (McCall, Jo) (Entered: 07/04/2007) |
| 07/04/2007 | ○ 247 | Transcript, Date of Hearing: 6-8-07 *Trial Proceedings: Hearing re: Debtor's Objection to Claim of Jose Abreu (#1, #4) Volume III.* (McCall, Jo) (Entered: 07/04/2007) |
| 07/04/2007 | ○ 248 | Transcript, Date of Hearing: 6-11-07 *Trial Proceedings: Hearing re: Debtor's Objection to Claim of Jose Abreu (#1, #4) Volume IV.* (McCall, Jo) (Entered: 07/04/2007) |
| 08/31/2007 | ○ 249 | Notice and Opportunity for Hearing *re Trustee's Intent to Pay Priority Tax Claim* Filed by Trustee John W. Richardson (Attachments: # 1 Certificate of Service) (Maher, Charles) (Entered: 08/31/2007) |
| 09/24/2007 | ○ 250 | Motion for Entry of Default *Request for Entry of Order Authorizing Distribution of Tax Claim* (RE: related document(s)249 Opportunity for Hearing filed by Trustee John W. Richardson). Filed by Trustee John W. Richardson (Attachments: # 1 Declaration # 2 Certificate of Service) (Maher, Charles) (Entered: 09/24/2007) |
| 09/24/2007 | ○ 251 | Order Granting Motion for Entry of Default (Related Doc # 250) (jd, ) (Entered: 09/25/2007) |
| 10/26/2007 | | Flags Set-Reset- Exhibits (cp, ) (Entered: 10/26/2007) |
| 11/13/2007 | ○ 252 | Second Application for INTERIM Compensation *and Expense Reimbursement* for Charles P. Maher, Trustee's Attorney, Fee: $17,373.00, Expenses: $368.14. Filed by Attorney Charles P. Maher |

(Attachments: # 1 Declaration of Charles P. Maher# 2 Certificate of Service) (Maher, Charles) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO MATCH TITLE OF PDF Modified on 11/14/2007 (jd, ). (Entered: 11/13/2007)

| | | |
|---|---|---|
| 11/13/2007 | ⬤253 | Notice of Hearing *of Interim Application for Compensation and Expense Reimbursement by Counsel for Trustee* (RE: related document(s)252 Second Application for Compensation *and Expense Reimbursement* for Charles P. Maher, Trustee's Attorney, Fee: $17,373.00, Expenses: $368.14. Filed by Attorney Charles P. Maher (Attachments: # 1 Declaration of Charles P. Maher# (2) Certificate of Service) (Maher, Charles)). Hearing scheduled for 12/5/2007 at 10:30 AM at San Jose Courtroom 3099 - Efremsky. Filed by Trustee John W. Richardson (Attachments: # 1 Certificate of Service) (Maher, Charles) (Entered: 11/13/2007) |
| 12/05/2007 | ⬤ | Hearing Held (RE: related document(s)252 Second Application for INTERIM Compensation *and Expense Reimbursement* for Charles P. Maher, Trustee's Attorney, Fee: $17,373.00, Expenses: $368.14. Filed by Attorney Charles P. Maher (Attachments: # (1) Declaration of Charles P. Maher# (2) Certificate of Service) (Maher, Charles) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO MATCH TITLE OF PDF Modified on 11/14/2007 (jd, ).). Approved, no oppos. (cp, ) (Entered: 12/07/2007) |
| 12/06/2007 | ⬤254 | Order Granting Application For Compensation (Related Doc # 252). fees awarded: $17373.00, expenses awarded: $368.14 for Charles P. Maher (jd, ) (Entered: 12/06/2007) |
| 07/09/2008 | ⬤255 | Memorandum Decision After Trial (RE: related document(s)81 Objection to Claim filed by Debtor Corrina Curiel Lona). (aw, ) (Entered: 07/09/2008) |
| 07/09/2008 | ⬤256 | Order After Trial (RE: related document(s)255 Memorandum Decision, 81 Objection to Claim filed by Debtor Corrina Curiel Lona). (aw, ) (Entered: 07/09/2008) |
| 07/11/2008 | ⬤257 | Notice of Entry of Order Regarding: (RELATED DOCUMENT: 255 Memorandum Decision After Trial, 256Order After Trial)Filed by Creditor Jose Abreu (Kornbluh, David) Modified on 7/14/2008 (jd, ).CORRECTIVE ENTRY: NOT LINKED - COURT CORRECTED. (Entered: 07/11/2008) |
| 07/11/2008 | ⬤258 | BNC Certificate of Mailing (RE: related document(s)255 Memorandum Decision). Service Date 07/11/2008. (Admin.) (Entered: 07/11/2008) |

| 07/11/2008 | ❷259 | BNC Certificate of Mailing (RE: related document(s)256 Order). Service Date 07/11/2008. (Admin.) (Entered: 07/11/2008) |
| --- | --- | --- |
| 07/18/2008 | ❷260 | Notice of Appeal to District Court , Fee Amount $ 255.. Appellant Designation due by 7/28/2008. Transmission to District Court due by 8/18/2008. Filed by Debtor Corrina Curiel Lona (Whitman, Judith) (Entered: 07/18/2008) |
| 07/18/2008 | ❷261 | Statement of Election to District Court, (RE: related document(s)260 Notice of Appeal filed by Debtor Corrina Curiel Lona). Filed by Debtor Corrina Curiel Lona (Whitman, Judith) CORRECTIVE ENTRY: COURT ADDED LINKAGE TO DOCUMENT #261. Modified on 7/21/2008 (er, ). (Entered: 07/18/2008) |
| 07/18/2008 | ❷262 | Certificate of Service (RE: related document(s)261 Statement of Election on Appeal, 260 Notice of Appeal). (Whitman, Judith) (Entered: 07/18/2008) |
| 07/18/2008 | | Receipt of filing fee for Notice of Appeal(03-53915) [appeal,ntcapl] ( 255.00). Receipt number 5755003, amount $ 255.00 (U.S. Treasury) (Entered: 07/18/2008) |